THE STATE OF OHIO, APPELLEE, *v.* COOK, APPELLANT.

[Cite as *State v. Cook* (1992), 65 Ohio St.3d 516.]

(No. 92–986—Submitted November 10, 1992—Decided December 18, 1992.)

*Joseph T. Deters*, Prosecuting Attorney, and *Christian J. Schaefer*, Assistant Prosecuting Attorney, for appellee.

*Elizabeth Agar* and *Louis H. Bolce II*, for appellant.

MOYER, C.J.  Appellant has raised twenty-eight propositions of law.  We have reviewed each and, for the reasons stated below, we find all of them to be without merit.  Having independently reviewed the record and weighed the mitigating factors against the aggravating circumstances, we affirm appellant's convictions and death sentence.

In his twenty-seventh proposition of law, appellant argues that he was denied his right to a speedy trial by the lapse of almost seven months between the time of his arrest and trial.  Appellant was arrested on January 19, 1990.  A parole holder was issued on January 20, 1990.  He was incarcerated for one hundred ninety-nine days before his trial began on August 6, 1990.  The triple-count provision of R.C. 2945.71(E) does not apply when a defendant is held on a parole holder.  See *State v. Martin* (1978), 56 Ohio St.2d 207, 10 O.O.3d 369, 383 N.E.2d 585.  Nor was there, under the facts and circumstances of this case, a violation of appellant's constitutional right to a speedy trial.  *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101.  Thus, this proposition is rejected.

Appellant in his third proposition of law states that the systematic exclusion of prospective jurors opposed to the death penalty violated his right to a fair and impartial jury.  Under *Wainwright v. Witt* (1984), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841, a potential juror may be excluded for cause if his or her views on the death penalty would prevent or substantially impair his ability to perform his duties as a juror.  In *State v. Esparza* (1988), 39 Ohio St.3d 8, 529 N.E.2d 192, this court held that the use of peremptory strikes against prospective jurors opposed to the death penalty was proper.  See, also, *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph

two of the syllabus; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph two of the syllabus. Accordingly, appellant's proposition is without merit.

In proposition of law twenty, appellant challenges the state's use of peremptory challenges to exclude from the jury three potential jurors of defendant's race. Under the United States Supreme Court's holding in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, a defendant may raise a prima-facie case of purposeful discrimination in the selection of a jury based solely on the prosecutor's use of peremptory challenges. The defendant must show that he belongs to a cognizable racial group, and that the prosecutor excluded members of his own race. The defendant must also show that those facts and other circumstances raise an inference that the prosecutors used the peremptory challenges to exclude members of the defendant's race. The prosecutor's statements and actions during voir dire may refute this inference. If the trial court in its discretion decides that such an inference has arisen, the burden shifts to the state to articulate a neutral reason for excluding the prospective jurors. A valid neutral reason need not be as compelling as one justifying a challenge for cause. *Id.* at 96–98, 106 S.Ct. at 1723–1724, 90 L.Ed.2d at 87–89.

Appellant is black. The state exercised peremptory challenges on three potential jurors who were black. Two blacks did, however, sit on the jury. The trial court never made a finding that appellant had established a prima-facie case of discrimination. Nevertheless, the prosecutor did articulate neutral reasons for the peremptory exclusion of each black potential juror. Venire member Bullock had had a dispute with a police officer and expressed that he might have a problem sitting on a criminal case. Prospective juror Montgomery expressed moral reservations about the death penalty. Venire member Lowry appeared ambivalent about the death penalty, did not mention a traffic violation apparently on her record, and appeared uncomfortable during questioning. While these reasons may not rise to the level of a challenge for cause, they need not do so. *Batson, supra.* While it is doubtful that appellant established even a prima-facie case, we need only decide whether the trial court's decision that the prosecutor articulated sufficiently neutral reasons for the exclusion was clearly erroneous. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 589 N.E.2d 1310. We hold that the trial court's ruling was not clearly erroneous.

In his nineteenth proposition of law, appellant argues that the trial court deprived him of his Sixth and Fourteenth Amendment rights when it admitted the testimony of witnesses who had been previously hypnotized. Specifically, appellant alleges that the trial court should have held an evidentiary hearing

to assess the possible effects of hypnotism and instructed the jury as to its potential dangers. We note first that counsel for appellant did not object to the testimony of the witnesses during trial, did not proffer a cautionary instruction, and did not cross-examine any of the witnesses on the subject. Appellant therefore has waived any challenge to the testimony, absent plain error. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364.

When the state seeks to introduce hypnotically enhanced testimony, the trial court must determine whether, in the totality of the circumstances, the proposed testimony is sufficiently reliable to merit admission. *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph three of the syllabus. The court should make this determination in a pretrial hearing, applying the several factors listed in *Johnston*. *Id.* at 54–55, 529 N.E.2d at 906. Such a hearing is not, however, required when the previously hypnotized witness testifies to facts recalled prior to any hypnosis. *Id.* at 50–51, 529 N.E.2d at 903; *State v. Spirko* (1991), 59 Ohio St.3d 1, 570 N.E.2d 229; *State v. Maurer, supra*. In both *Spirko* and *Maurer*, hypnosis uncovered no new evidence of any significance. Consequently, we held that there was no error in allowing the witnesses to testify. In the instant case, witnesses Tourney, Whitt and Teppe identified appellant prior to any hypnosis. Counsel for appellant knew of the hypnosis prior to trial, but in a pretrial session told the court that he did not want to bring up the issue. In the same hearing, the prosecutor indicated that hypnosis had uncovered no evidence of any significance. We find no indication in the record that at trial the state elicited any hypnotically induced testimony from the witnesses. Appellant urges us to hold that whenever a witness has been hypnotized in an attempt to enhance his or her memory, even if it is not shown hypnosis has elicited any additional information of consequence, the court must hold a *Johnston* hearing. We decline to extend *Johnston* in that manner. No plain error occurred here; consequently, appellant's nineteenth proposition of law is without merit.

In his eighteenth proposition of law, appellant asserts that the officers who detained him outside the phone booth did so in violation of his constitutional rights, and that the fruits of his arrest and search should not have been admitted at trial. Specifically, he alleges that Officers Meiners and Luken, who detained and later arrested appellant based on an initial phone call from an officer investigating Frank Shorter's murder, had to have been actively involved in the investigation, and had to have had sufficient information from the officers actually involved in the investigation to justify good-faith reliance thereon.

However, no such stringent requirements exist. An officer need not have knowledge of all the facts necessary to justify an investigatory stop, as long as the law enforcement body as a whole possesses such facts and the detaining officer reasonably relies on those who possess the facts. *State v. Henderson* (1990), 51 Ohio St.3d 54, 554 N.E.2d 104; *Whiteley v. Warden* (1971), 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. A radio broadcast may provide the impetus for an investigatory stop, even where the officer making the stop lacks all of the information justifying the stop. *State v. Holmes* (1985), 28 Ohio App.3d 12, 28 OBR 21, 501 N.E.2d 629. The relevant inquiry is whether the law-enforcement community as a whole has complied with the Fourth Amendment; the entire system is required to possess facts justifying the stop or arrest, even though the arresting officer does not have those facts. *Henderson, supra.*

In this case, Sergeant Guy was involved in taping and tracking appellant's telephone call to the victim's family on January 19, 1990. Sergeant Guy knew that the caller had left two spent bullets, one of which matched the bullet that killed Shorter. The caller had also threatened to dispose of the murder weapon if he were not paid a substantial reward. Obstruction of justice and tampering with evidence are felonies under the circumstances in this case. R.C. 2921.32 and 2921.12. The police clearly had probable cause to arrest the person whose call was traced to the booth at 1601 Main Street. Sergeant Guy radioed for Officers Meiners and Luken, who were nearby, to detain the caller at 1601 Main Street. When the officers arrived, they saw appellant exiting a phone booth, which was adjacent to another phone booth containing a woman talking on the phone. Officers Meiners and Guy immediately radioed to find out whether the suspect was male or female. Upon being told the suspect was a male, they continued to detain appellant until Sergeant Guy arrived, minutes later. The female caller was able to immediately identify appellant as having just used the other phone booth.

Under these circumstances, Officers Meiners and Luken had the authority to detain appellant, even though they personally lacked information amounting to probable cause for an arrest. They had been told to detain a suspect using a phone booth at that location, they observed appellant leaving a phone booth, they quickly ascertained that appellant had in fact just used that phone, and the officer requesting the stop over the radio had probable cause for an arrest. An investigatory *Terry* stop is a limited infringement on personal freedom, and is proper when based on articulable facts constituting reasonable suspicion and the subsequent investigation is pursued diligently in a manner likely to confirm or dispel suspicion quickly. *United States v. Sharpe*

(1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (twenty-minute investigatory stop not excessively long where investigation was pursued diligently).

Sergeant Guy arrived at the scene and confirmed appellant's identity within fifteen minutes of the initial stop. Based on these circumstances, we cannot say that appellant's Fourth Amendment rights were violated. Thus, it was not error to admit the evidence obtained from the search of his person.

Appellant asserts in his fourth proposition of law that he was prejudiced by the introduction at trial of gruesome photographs that were cumulative and repetitive. We have reviewed the six color photographs of the corpse, lying where it was found, from different distances and angles. Two more are black and white photos taken at the morgue. There is some repetition in these photos, but they do illustrate the cold, purposeful brutality of the murder and support the testimony of witnesses on the scene and of the coroner. *State v. Davis* (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362. Shorter was killed by a single bullet, fired at point-blank range, that entered from under his chin, went through his mouth, and then into his brain. As we noted in *Davis*, the cold execution-style nature of such a killing, paradoxically, serves to minimize the inflammatory nature of the photos. Appellant was not prejudiced by the admission of the photos.

Appellant's seventeenth proposition of law states that a prosecution witness violated Evid.R. 404(B) when he mentioned at trial that stolen property unconnected to this crime was found in appellant's apartment. We note first that the prosecution witness, a police officer, made the statements not on direct examination, but on cross-examination by counsel for the appellant. The prosecution never used this information in its argument. Further, defense counsel never moved to strike the statements, or for a cautionary instruction. Absent plain error, appellant has waived any challenge to the statements' admission. *State v. Wickline* (1990), 50 Ohio St.3d 114, 552 N.E.2d 913. We find no plain error here. Nor can we say that appellant was in any way prejudiced. The case against appellant rested on a mosaic of strong circumstantial evidence. Any effect of this testimony on the jury's deliberations would have been, at most, infinitesimal. Accordingly, this proposition of law is without merit.

Appellant asserts in proposition of law twenty-four that the admission of statements he made while in police custody and after requesting counsel violated his Fifth and Sixth Amendment rights. Appellant alleges that his silence upon being interrogated after his arrest was used against him at trial, and that police used certain noninculpatory statements as a basis for identification by comparing his voice to recordings of the anonymous telephone caller. The use of the sound of one's voice to determine vocal traits for

identification, and not to establish guilt from the content of the speech, does not violate the Fifth Amendment. *United States v. Dionisio* (1973), 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67. The substance of what appellant said at the police station was not used against him. Thus, no constitutional violation occurred. Furthermore, our review of the record does not reveal that appellant's silence was used against him, and no such objection was raised at trial. Finally, appellant's failure to timely move for suppression of his statements constitutes waiver of any challenge. *State v. Wade* (1978), 53 Ohio St.2d 182, 7 O.O.3d 362, 373 N.E.2d 1244, paragraph three of the syllabus, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157.

Appellant asserts another evidentiary challenge in his twenty-fifth proposition of law. He alleges that the admission of testimony that he was considering buying a gun was irrelevant and highly prejudicial. Appellant made the statement to a fellow employee, who told appellant's employer about it. The employer confronted appellant and advised him against the purchase. The evidence was not irrelevant. It tended to increase the likelihood that appellant had purchased a gun prior to the Shorter homicide. Evid.R. 401. Nor did the risk of unfair prejudice substantially outweigh the probative value. Evid.R. 403(A). Although the employer stated that the conversation took place sometime between October 18 and October 31, 1989, and thus could have occurred after the Shorter homicide, the jury had the freedom to give the statement appropriate weight when considering the evidence. Furthermore, the court instructed the jury that the statement made to the fellow employee about the gun was being admitted for the limited purpose of showing why appellant's employer confronted appellant about the gun. Under these circumstances, we cannot say that appellant suffered any prejudice. Consequently, this proposition of law is without merit.

In proposition of law twenty-two, appellant asserts that the judgments against him were the result of collective consideration of admissible and inadmissible evidence, and thus must be reversed. This proposition depends on the putative merit of appellant's propositions of law six through ten, eighteen, nineteen, twenty-four and twenty-five. Because each of those propositions of law lacks merit, we hold that this proposition fails as well.

Appellant's sixth through tenth propositions of law are interrelated and shall be taken together. They all relate to the sufficiency of the evidence supporting the underlying felonies of kidnapping and aggravated robbery, and the specifications based thereon. This court held in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, that:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at

trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * * "

Upon reviewing the evidence introduced at trial, we conclude that reasonable minds could find that the state proved each of the elements of both kidnapping, R.C. 2905.01, and aggravated robbery, R.C. 2911.01, beyond a reasonable doubt. Shorter disappeared from the clothing store where he worked, and five days later was found dead with a gunshot wound to the head. Clothing and about $300 were taken from the store. About $50 was missing from Shorter's wallet. Appellant needed money for a car payment, and made that payment the very day of the murder. Several eyewitnesses placed him outside the clothing store and near the scene of the murder, with the victim. Appellant had been in possession of a bullet that matched the bullet found in Shorter's brain. The state did not fail to prove the concurrence of the aggravated robbery and murder, because the aggravated-robbery offense was ongoing from the time appellant walked into the victim's store until he killed him and took the money from his wallet. *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895.

For a kidnapping conviction and murder specification to be upheld, there must be significant restraint or movement, not just that incident to the killing itself. *Maurer, supra.* The building on Seitz Street where the victim was found is several miles from the store in Lockland. There was sufficient evidence for a reasonable jury to conclude that appellant, at gunpoint, moved Shorter and restrained his liberty to a degree sufficient to uphold a kidnapping conviction. Because the state did not fail to prove the elements of aggravated robbery and kidnapping, the aggravated-murder specifications based thereon do not fail, either. Consequently, appellant's sixth through tenth propositions of law are not well taken.

In his twenty-third proposition of law, appellant argues that he was deprived of his right to effective assistance of counsel. To prevail on this claim, the defendant must show both deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. Prejudice means that counsel's errors compromised the reliability of the trial. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Hindsight is not permitted to distort the assessment of what was reasonable

in light of counsel's perspective at the time. *Id.* at 687–689, 104 S.Ct. at 2064–2066, 80 L.Ed.2d at 693–695.

Appellant's specific allegations of attorney error fall under two categories: failure to investigate the law and facts relative to the case, and failure to object at certain times during the trial. As for the alleged failure to investigate, our independent review of the record reveals that trial counsel had an adequate knowledge of the law and facts of the case to qualify as the counsel guaranteed by the Sixth Amendment. Appellant's ineffectiveness argument is based primarily on the failure to obtain the exclusion of the testimony of previously hypnotized witnesses. We have already held that the admission of this testimony was proper. Consequently, appellant's argument is without merit. Appellant's argument that other failures of counsel to object deprived him of effective assistance of counsel derive from his propositions of law one and two, sixteen through eighteen, twenty-five and twenty-seven. In each of these propositions, we have held, or hold, *infra,* either that the evidence was properly admitted or that defendant suffered no prejudice. Appellant's twenty-third proposition of law is therefore without merit.

In his fifth proposition of law, appellant claims that the trial court's instruction to the jurors that they not be swayed by considerations of sympathy violated his Eighth Amendment rights. The trial court made no such instruction. Furthermore, we have held such an instruction to be permissible. *Jenkins, supra,* at paragraph three of the syllabus. This proposition of law is not well taken.

Appellant charges in his twenty-first proposition of law that the trial court violated his constitutional rights by failing to require the jury to articulate the method by which they weighed the aggravating circumstances. This is not so. Special verdicts by juries are required only where specifically mandated by statute. *Jenkins, supra.* Furthermore, appellant's counsel never submitted to the court such special instructions, and did not object to their absence before jury deliberations. Thus, the issue is waived.

Appellant further argues, in his twenty-sixth proposition of law, that the jury received inadequate instructions on eyewitness and voice identification. The court's charge on eyewitness identification instructed the jury to consider: the capacity of the witness; the witness's degree of attention at the time; the accuracy of prior description or identification; whether the witness had ever observed the defendant in the past; the time lapse between the event and the identification; and the circumstances surrounding the identification, including any deficiencies in the line-up. The trial court need not give requested instructions if the instructions it does give are adequate. *State v. Guster* (1981), 66 Ohio St.2d 266, 20 O.O.3d 249, 421 N.E.2d 157, syllabus. We hold

that the instruction given was adequate, and the trial court did not abuse its discretion in denying the request for a supplemental instruction.

Appellant's requested instruction on voice identification was based on *United States v. Telfaire* (C.A.D.C.1972), 152 U.S.App.D.C. 146, 469 F.2d 552, to the effect that if the prosecution did not establish the accuracy of voice identification beyond a reasonable doubt, the jury must find the defendant not guilty. This is not a correct statement of the law. The prosecution was required to prove the identity of the perpetrator beyond a reasonable doubt. The state had other significant sources of identification of the defendant, including eyewitness testimony. Accuracy of voice identification is not an element of any crime, but an element of the foundation for the admission of voice-identification testimony. Appellant's proposed instruction was thus not a proper statement of the law, and the trial court was not required to give it. *State v. Wenger* (1979), 58 Ohio St.2d 336, 12 O.O.3d 309, 390 N.E.2d 801.

Furthermore, Crim.R. 30(A) requires proposed instructions to be submitted at the close of evidence, before final arguments. The failure to comply with this rule constitutes waiver of the issue. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583, paragraph two of the syllabus. Appellant did not request the instructions until after closing arguments. Thus, appellant's proposition of law twenty-six is without merit.

In his first and second propositions of law, appellant attacks the imposition of the death sentence because of the trial court's failure to merge the two aggravated-murder counts and certain death penalty specifications during the penalty phase of the trial. Appellant first asserts that the submission of two counts of aggravated murder to the jury at the penalty phase, when only one death occurred, was prejudicial error because it affected the jury's decision to recommend the death penalty.

A defendant has the right, when convicted on two or more counts containing death-penalty specifications, to have the jury in the penalty phase consider the aggravating circumstances for each count individually, and not combine aggravating circumstances from different counts. *Cooey, supra,* at paragraph three of the syllabus. Thus, it would have been error for the court to have combined all the aggravating circumstances in the two aggravated-murder counts against defendant. This did not happen in this case. The indictment contained two aggravated-murder counts, each with three death-penalty specifications: two under R.C. 2929.04(A)(7) and one under R.C. 2929.04(A)(3). The trial court merged the single (A)(3) specification into the two (A)(7) specifications in count one, and merged the two (A)(7) specifications into the single (A)(3) specification in count two. It then instructed the jurors to consider each count with its specifications separately in its deliberations in

the penalty phase. Thus, the jury did not combine aggravating specifications in one count with those in another. Furthermore, any error that may have occurred in the penalty phase of the trial is cured by our independent review of the record and reweighing of aggravating circumstances against mitigating factors. *Cooey, supra; State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710; *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.

Finally, this court has held that although it is error for a trial court to sentence a defendant on two aggravated-murder counts for the murder of one person, the error is harmless because "[t]he error was merely procedural in nature and did not involve any substantial right." *State v. Brown* (1988), 38 Ohio St.3d 305, 318, 528 N.E.2d 523, 538–539. The trial judge in this case imposed only a single death penalty. There was therefore only one judgment of conviction. See *State v. Henderson* (1979), 58 Ohio St.2d 171, 12 O.O.3d 177, 389 N.E.2d 494. For the foregoing reasons, appellant suffered no prejudice from his having been sentenced to death based on having been found guilty of both aggravated-murder counts.

Appellant asserts in his second proposition of law that he suffered prejudicial error when the trial court allowed the jury to consider a duplicative specification on the first count of aggravated murder. This specification alleged that appellant committed aggravated robbery and was the principal offender in the commission of the aggravated murder, or if not the principal offender, committed the aggravated murder with prior calculation and design. This specification tracked the language of R.C. 2929.04(A)(7). This court has held that it is error for a trial court to allow the jury to consider prior calculation and design together with principal-offender status as separate aggravating circumstances. *State v. Penix* (1987), 32 Ohio St.3d 369, 513 N.E.2d 744. The reason for this is that R.C. 2929.04(A)(7) sets these circumstances out as mutually exclusive alternatives, and a trial court may not allow the jury to cumulate both as aggravating circumstances, as the court did in *Penix.* This case differs from *Penix* in that the prior calculation and design and principal offender elements of R.C. 2929.04(A)(7) were charged disjunctively to the jury in a single specification; the jury could not have found both elements to have been proven, as it could have in *Penix.* In addition, our independent review of aggravating circumstances against mitigating factors cures any error in the penalty phase. *Lott, supra; Landrum, supra.* Finally, trial counsel's failure to object to the instruction renders any error waived, unless plain error is found. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus. Our review of the record reveals nothing rising to the level of plain error. Appellant's identical argument as to specification number two of count one fails for the same reason.

Appellant argues further that the submission of two counts of aggravated murder for a single death improperly allowed the jury to consider duplicative specifications under R.C. 2929.04(A)(7), in count one, and R.C. 2929.04(A)(3), in count two. In *State v. Jenkins, supra,* paragraph five of the syllabus, we held that it is error for the trial court to submit separate specifications under R.C. 2929.04(A)(3) and 2929.04(A)(7) where they arose from the same course of conduct and were thus unnecessarily duplicative. We also held, however, that in such circumstances the reviewing court should itself apply the doctrine of merger and may uphold the sentence if it determines beyond a reasonable doubt that the remaining aggravating circumstances outweigh the mitigating factors, and the jury's consideration of duplicative specifications did not affect its verdict. We so find in this case. The only mitigating factor offered in this case was residual doubt about appellant's guilt of these crimes. As discussed in more detail below, this factor does not outweigh even a single aggravating circumstance proven in this case. In addition, the trial court's admonition to consider the R.C. 2929.04(A)(7) specifications in count one separately from the R.C. 2929.04(A)(3) specification in count two undermines appellant's argument that the cumulative effect of the allegedly duplicative specifications improperly affected the jury's verdict. Finally, trial counsel's failure to object waives any reversal absent plain error, which we do not find in this case.

Appellant states in his sixteenth proposition of law that the trial judge's personal bias and his reference to factors outside the record, including a presentence report detailing appellant's prior offenses, violated his constitutional right to due process. In conducting his independent review of aggravating circumstances against mitigating factors, the trial judge referred to a presentence report he had ordered. This report indicated defendant had an extensive and serious prior criminal record. The judge also referred to a friend of his who had been murdered, and made reference to a court psychiatric clinic report that had been completed upon appellant's transfer of parole from New York to Ohio. R.C. 2929.03(D)(1) provides in pertinent part that "[a] pre-sentence investigation or mental examination shall not be made except upon request of the defendant." One purpose of this provision is to keep from the sentencing body the defendant's prior criminal record. *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542. Consideration of nonstatutory aggravating circumstances is reversible error when it is impossible for the reviewing court to determine whether the weighing process of the sentencing body would have been different absent the impermissible circumstances. *State v. Davis* (1988), 38 Ohio St.3d 361, 528 N.E.2d 925. Challenged actions of a trial judge do not justify reversal, however, where the defendant fails to show prejudice under the circumstances. *Id.* In the instant case, appellant offered no additional evidence in the penalty phase of the trial. All that was

offered was the possible residuum of doubt that appellant was the killer. The state proved several aggravating circumstances beyond a reasonable doubt. The murder happened in the course of committing or fleeing an aggravated robbery and kidnapping, and it was done to escape apprehension and detection. Appellant's residual-doubt mitigating factor carries little weight. The evidence admitted at trial points convincingly to appellant and to no one else. Under these circumstances, we cannot say that the result would have been different had the trial court not considered the appellant's prior record and psychiatric clinic report.

The United States Supreme Court has held that no constitutional violation occurs when a trial court in imposing a death sentence violates state law by considering the defendant's prior criminal record. *Barclay v. Florida* (1983), 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134. Although the trial court's consideration of the presentence report was error, the error was harmless and did not compromise appellant's constitutional rights. The court in *Barclay* also considered an argument that the trial court's mention of his personal experiences with crimes similar to the one involved in that case was not reversible error. A judge's sentencing requires the exercise of personal judgment; the court is not required to divorce itself from all personal experiences and make his decision in a vacuum. *Id.* On this authority, we hold that the trial court's reference during sentencing to a friend of his who was murdered does not violate appellant's constitutional rights or require reversal of his sentence.

Appellant, in his eleventh proposition of law, alleges that the trial court's consideration of the nature and circumstances of the offense in its sentencing of appellant violated his right to be free from arbitrary infliction of the death penalty. We considered and rejected this argument in *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598. In *Stumpf,* we held that the sentencing body is not only permitted, but required, by R.C. 2929.04(B) to consider the nature and circumstances of the case in deciding whether the aggravating circumstances outweigh the mitigating factors. The trial court did so in this case. This proposition of law is without merit.

In proposition of law fourteen, appellant asserts that his sentence of death is not proportionate to sentences given for similar offenses in the same and other jurisdictions, in violation of his Eighth and Fourteenth Amendment rights. In *Jenkins, supra,* we held that proportionality review was not constitutionally mandated. The statutory proportionality review required by R.C. 2929.05(A) assures that the death penalty is imposed proportionately to other similar offenses and not in an arbitrary or capricious manner. Furthermore, appellant did not raise this issue in the trial court, and so it is waived.

*State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus. This proposition of law is not well taken.

Appellant argues in his fifteenth proposition of law that his death sentence must be set aside because it is disproportionately severe when compared to other Ohio cases in which the death penalty was pronounced. It is not. "The proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed." *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus. Our review of other Ohio death penalty cases leads us to conclude that the infliction of the death penalty in this case is proportionate. See, *e.g., Stumpf, supra; State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922; *State v. Scott* (1986), 26 Ohio St.3d 92, 26 OBR 79, 497 N.E.2d 55; *State v. Clark* (1988), 38 Ohio St.3d 252, 527 N.E.2d 844; *Esparza, supra.*

In his twelfth and thirteenth propositions of law, appellant challenges the constitutionality of Ohio's death penalty statute. This court has considered and rejected similar arguments on numerous occasions. As to proposition of law twelve, see, *e.g., State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237, paragraph one of the syllabus; *Jenkins, supra.* As to proposition of law thirteen, see, *e.g., State v. Sowell* (1988), 39 Ohio St.3d 322, 530 N.E.2d 1294.

In his twenty-eighth and final proposition of law, appellant asserts that the trial and appellate courts have a duty to independently review the record and address any errors not raised by defense counsel. Appellant cites no authority, and we know of none, that compels us to comb the record for any errors not raised at trial or on appeal. This proposition of law is without merit.

Having considered each of appellant's propositions of law, we must now independently weigh the aggravating circumstances against the mitigating factors pursuant to R.C. 2929.05(A). At the penalty phase of his trial, appellant refused to offer any additional evidence in mitigation. Instead, counsel offered "residual doubt" about the defendant's guilt as a mitigating factor under R.C. 2929.04(B)(7), which directs the sentencing body to consider "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."

Several aggravating circumstances exist in this case. The murder was committed for the purpose of escaping detection, apprehension, trial, or punishment for the offenses of aggravated robbery and kidnapping. R.C. 2929.04(A)(3). Even when we merge the two counts upon which appellant was convicted, and merge the R.C. 2929.04(A)(3) specification of the second count into the two R.C. 2929.04(A)(7) specifications of the first count, we are still left

with the two R.C. 2929.04(A)(7) specifications of murder committed in the course of aggravated robbery and kidnapping. We find that the state proved these aggravating circumstances beyond a reasonable doubt. Weighing these factors against appellant's only purported mitigating factor, residual doubt, we find that the aggravating circumstances outweigh the mitigating factor beyond a reasonable doubt.

Finally, having conducted a review of other cases in which the death penalty was imposed, we find the imposition of the death penalty in this case is neither excessive nor disproportionate. We have upheld death sentences based solely on a specification of murder during kidnapping. See, *e.g.*, *State v. Morales* (1987), 32 Ohio St.3d 252, 513 N.E.2d 267. We have also upheld the imposition of death stemming solely from murder in the commission of aggravated robbery. See, *e.g.*, *Scott, supra.*

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.