OPINION
{¶ 1} Defendant-Appellant William Tims appeals his adjudication of delinquency for one count of felonious assault with a firearm specification and one count of having a weapon while under disability, and his resultant commitment to the Department of Youth Services for those offenses. For the following reasons we affirm the judgment of the trial court.
 {¶ 2} At about 11:00 p.m. on August 10, 2002 Tims met Antonio Pierce and Tim Crawford near the Monte Carlo Lounge. While they stood around, Tims showed off the nine millimeter handgun that he was carrying that night to Pierce. Later Brian Hawkins approached the trio and asked Crawford to accompany him into the bar.
 {¶ 3} At about 1:00 a.m., an argument erupted between Hawkins and a group of people who had rented a limo that was parked outside the bar. Hawkins hit one of them in the face with a bottle and ran. The group chased Hawkins, caught him, and began beating him. One of the assailants offered to pay anyone who would shoot Hawkins. Tims jumped at the offer, pulling out his gun and shooting Hawkins. Tims received $100 for the shooting. Pierce both heard the offer and saw Tims accepting the payment.
 {¶ 4} While in the hospital, Det. Ward showed Hawkins a photo spread, and Hawkins identified Pierce as one of those involved in the fight. During the evidentiary hearing, Hawkins identified Tims as the shooter. Furthermore, Jack Chapman, the driver of the limo also identified Tims as the shooter.
 {¶ 5} Immediately after the shooting, police found a live round and a shell casing, both for a nine millimeter handgun, at the scene.
 {¶ 6} In order to prove the offense of having a weapon while under disability, the State offered evidence that at the time of the felonious assault, Tims was on probation for robbery.
 {¶ 7} The Juvenile Court found Tims responsible for the offenses with which he was charged. The court committed him to the custody of DYS. Tims now appeals.
 {¶ 8} Tims' first assignment of error:
 {¶ 9} "The appellant's adjudication of delinquency for felonious assault is based upon insufficient evidence in violation of appellant's due process rights guaranteed under theFourteenth Amendment to the United States Constitution."
 {¶ 10} In his first assignment of error, Tims argues that there was insufficient evidence of his identity as the shooter to support his adjudication of delinquency for felonious assault. "When a defendant challenges the legal sufficiency of the state's evidence, `the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Waddy (1992),63 Ohio St.3d 424, 430, 588 N.E.2d 819, quoting Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781.
 {¶ 11} In this case the State offered a substantial amount of evidence of Tims' identity as the shooter. Much of that evidence came from Pierce, who heard the offer for payment to shoot Hawkins and saw Tims accepting the money after the shooting. Pierce knew that Tims was carrying a nine millimeter handgun that night because Tims had shown it to him. Significantly, immediately after the shooting police found both a live round and a shell casing, both for a nine millimeter handgun, at the scene.
 {¶ 12} Evidence also came from Hawkins, who during the evidentiary hearing, identified Tims as the shooter. Hawkins knew Tims from the neighborhood. In fact, Hawkins had seen Tims just hours before the shooting when Hawkins recruited Crawford to accompany him into the bar. Furthermore, Chapman, the driver of the limo, also identified Tims as the shooter.
 {¶ 13} All of this evidence, when viewed together in a light most favorable to the State, clearly was sufficient to warrant the trial court's conclusion that Tims was the shooter and the court's resultant adjudication of delinquency. Tims' first assignment of error is without merit and is overruled.
 {¶ 14} Tims' second assignment of error:
 {¶ 15} "The appellant was deprived of due process of law, in violation of the Fourteenth Amendment to the United States Constitution because appellant had ineffective assistance of counsel."
 {¶ 16} In his second assignment of error, Tims alleges that he was denied the effective assistance of trial counsel because counsel chose not to file a motion to suppress the identification testimony of Pierce and Chapman. We disagree.
 {¶ 17} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time.State v. Cook (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 18} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 19} The State counters that counsel was not ineffective for electing not to file the motion to suppress because the motion would have failed. After all, counsel has no duty to file a motion to suppress if that motion has no likelihood of prevailing. State v. Benson (July 14, 1995), Montgomery App. No. 14427. Accordingly, then, we must consider what is required to warrant the suppression of identification testimony.
 {¶ 20} Initially, the defendant has the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers (1972),409 U.S. 188, 199, 93 S.Ct. 375. However, "even if an identification procedure is unduly suggestive, the identification testimony derived therefrom is not per se inadmissible solely for that reason. Reliability is the linchpin in determining its admissibility. As long as the identification itself is reliable, it is admissible despite the suggestive nature of the identification procedure. Reliability is determined from the `totality of the circumstances,' which includes the witness' opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated, and the time between the crime and the identification procedure.State v. Keene (Sept. 20, 1996), Montgomery App. No. 14375, citations omitted.
 {¶ 21} As pertaining to Pierce's identification of Tims as the shooter, it was certainly reasonable for Det. Ward to show him a single photo of Tims rather than a full photo spread. Pierce knew Tims prior to the shooting. In fact, Pierce and Tims had been together for the several hours proceeding the shooting. Furthermore, Pierce is the one who provided police with Tims' name. The photo identification was simply an extra precaution taken by Det. Ward in order to confirm that he and Pierce were talking about the same person known as "Little Billy," William Tims. Clearly Pierce's photo identification could have in no way affected the reliability of his testimony in court.
 {¶ 22} Regarding Chapman's identification, Tims insists that the photo spread was tainted because his photo was a little closer and lighter than those of the other suspects. While we agree that the ideal situation would be to provide photos of suspects with the same complexion and from the same distance, such slight variations do not necessarily invalidate the identification procedure. Instead, we next turn to the reliability of Chapman's identification.
 {¶ 23} Chapman had the opportunity to see Tims both before and during the shooting. He was paying attention to the situation, particularly because the altercation had started at his limo. Tims correctly states that Chapman was unable to make an identification the day after the shooting. However, he overlooks the fact that Chapman was not shown a photo of Tims that day. In fact, the reliability of Chapman's later identification of Tims is increased by the fact that he did not identify a shooter from other photo spreads, but waited until he saw Tims' photo. Finally, Chapman was quite certain of his identification of Tims when he made it, despite the passage of more than one month. Thus, Chapman's identification of Tims was reliable.
 {¶ 24} In conclusion, we note that even if counsel had been able to successfully challenge the identification testimony of Chapman and/or Pierce, Tims made no mention of Hawkins' identification. Standing alone the identification by the victim, who knew the shooter, could have been enough to support the trial court's delinquency adjudication. Therefore, Tims is unable to demonstrate prejudice from counsel's decision not to file a motion to suppress Chapman and Pierce's identification testimony.
 {¶ 25} Tims' second assignment of error fails and is overruled.
 {¶ 26} The judgment of the trial court is affirmed.
Fain, P.J. and Grady, J., concur.