OPINION
{¶ 1} Michael Cleaver appeals from his conviction of felonious assault (deadly weapon) and having a weapon while under disability after a bench trial. Cleaver was also convicted of a firearm specification.
 {¶ 2} The victim of the assault was Herman Hicks. His testimony is set out in the State's brief and is in part as follows:
 {¶ 3} On the late afternoon of July 14, 2005, Herman Hicks was driving down McClain Street in the city of Dayton when he spotted some men on a porch of a house at 139 McReynolds. Hicks noted that one man had an AK 47 and another appeared to be a nine millimeter handgun. Hicks made a 911 call from his vehicle to report what he had seen. The 911 call was introduced into evidence and in the call Hicks reports his observation of the weapons in an excited tone. Hicks reports to the dispatcher that his car has been boxed in by a woman in a red Mustang, and he could not get out of the area. Shortly thereafter, Hicks called the police dispatcher and reported that he had just been shot. Police responded to the area and Hicks was removed to the hospital where he was treated and released for a gunshot injury to his left ear.
 {¶ 4} At trial Hicks testified that he was surrounded by the men who had been on the porch. He testified that Cleaver made racial epithets at him, and soon the two men began fighting. (Tr. 27). After a struggle, he said Cleaver and the other men knocked him to the ground. After being kicked several times, and beaten with baseball bats, Hicks saw one of the men hand Cleaver the nine millimeter hand gun. (Tr. 34). Cleaver took aim and fired the gun at Hicks, hitting him in the ear. (Tr. 36). Hicks testified Cleaver picked up his ear, and began taunting him with more racial slurs and telling Hicks he would never get his ear back. (Tr. 42). Hicks was able to get off the ground and run away in fear of being shot again, all while Cleaver was holding his ear, yelling, "come back and get your ear, nigger."
 {¶ 5} Based upon Hicks' complaint, the police tracked Cleaver's whereabouts to 104 McReynolds. Two days later when they arrived, the front door was wide open and they observed a man matching Cleaver's description sitting inside the house. Officer Brian Spencer asked this man to identify himself, and he responded with the name, "Michael Cleaver." Spencer ordered Cleaver to the floor, and placed him under arrest. After placing Cleaver in handcuffs Spencer performed a protective sweep of that area, and asked Cleaver if there were any weapons in the couch. Cleaver said there was a gun under the couch, and Spencer found a Beretta nine millimeter handgun where Cleaver had indicated it would be. The gun contained a magazine with eight nine millimeter bullets. Police soon became aware of Cleaver's previous felony drug conviction, and added a charge of having weapons under disability.
 {¶ 6} Dr. Akpofure Ekeh, a trauma surgeon at Miami Valley Hospital, testified he treated Hicks upon his arrival in the hospital emergency room on July 14, 2005. Dr. Ekeh stated that Hicks told him he had received a gunshot to his left ear. Ekeh said he observed that Hicks had an evulsim of his left ear, which means a portion of the ear is missing. Ekeh said the pattern of injury appeared to be that of a blast injury. (T. 98). Ekeh testified that the injury to Hicks' ear was consistent with a gunshot wound. He noted that the laceration of Hicks' ear was somewhat jagged, characteristic of a blast wound. He also opined that the wound was not consistent with human bite wounds he has observed in the past. Hicks' medical records indicate there was some swelling on the left side of his neck. Photographs taken of Hicks' injury shows a deep laceration below the ear consistent with a blast injury. (State's Ex. 4 and 5). Dr. Ekeh also said he found air in the soft tissues in the area of the victim's neck and adjacent to his ear consistent with a gunshot wound after Hicks was examined by a C.T. Scan and XR-ays. (T 103). Dr. Ekeh also said he observed fractures to Hicks' lower vertebrae consistent with Hicks' explanation that he had been struck with a baseball bat. (T 109).
 {¶ 7} Detective Elizabeth Martinez of the Dayton Police Department testified she interviewed Hicks on the morning of July 15, 2005. She said she obtained a verbal statement from Hicks including a description of his alleged assailant. Martinez said she inserted that description into a computer and obtained approximately 112 photos of individuals with those descriptive characteristics. Martinez said Hicks looked at one full page of six photographs and then upon viewing a second page of six photographs picked out the picture of Michael Cleaver without hesitation. Martinez testified she interviewed Cleaver a few days later and he denied any involvement in Hicks' shooting.
 {¶ 8} Dr. William Lavin, a radiologist with Miami Valley Hospital, testified he reviewed Hicks' C.T. Scan and discovered air adjacent to Hicks' left ear consistent with a gunshot wound to the ear. (T. 141). Dr. Lavin said he also observed three fractures to Hicks' lower back. Lavin conceded that you can find air in the soft-tissue associated with bite wounds. Lavin said it depends on how deep the wound is, but air can be seen on examination of a laceration of the outer skin. (T. 141).
 {¶ 9} Shanna Jenkins testified she was present just before the incident occurred between Hicks and the defendant. She said she lives on the corner of McReynolds and McClain Streets. She said on the afternoon of July 14, 2005, she was outside her home with her three children when Herman Hicks came down the street and began yelling obscenities at some young boys in the neighborhood. Jenkins said she asked Hicks to leave the area and Hicks came into her yard and said, "`B' I have a f'ing nine, and I will shoot this whole f'ing block up." (T. 156). She said Hicks parked his car up the street from her. Jenkins said when Hicks made his threat, she began yelling and that's when Michael Cleaver came outside and asked what was the problem. Jenkins said Hicks swore at Cleaver and swung at him. She said Cleaver did not have a gun on him. Jenkins said she then got into her car and drove away. She said she returned thirty minutes later and the police had arrived. (T. 158).
 {¶ 10} Michael Cleaver testified he was living at 104 McReynolds Street at the time of the altercation. He testified he came outside his house on July 14th when he heard a man yelling. Cleaver said he heard the man say he had a nine and he would shoot the whole block up. (T. 165). Cleaver said he did not know the individual but approached him to ask him what the problem was. Cleaver said the individual, he later discovered was Hicks, began using vulgarity and swung at him and then slipped. Cleaver said despite the fact Hicks was a much larger man than he was, he tackled Hicks to the ground. Cleaver said that in defending himself he bit Hicks' ear. He said he didn't remember continuing to bit Hicks' ear but Hicks' ear ended up in his hand. On cross-examination, Cleaver admitted he told Detective Martinez that he heard the commotion in front of his house but didn't know what it was all about. (T. 174). He said he didn't tell Detective Martinez the truth because "I was in a position I'd never been in before, and that's how I reacted to it." (T. 177). He admitted the gun the police recovered was a nine millimeter Beretta that he kept for protection because he lived in a bad neighborhood. Cleaver said on cross-examination that Hicks got up and ran away after Cleaver bit his ear off despite the fact Hicks was a much larger man than him. (T. 185).
 {¶ 11} In his first assignment, Cleaver argues his convictions for felonious assault and the related gun specification are against the manifest weight of the evidence. He argues that Hicks' testimony was contradictory and unbelievable. He notes that at trial Hicks claimed four strangers attacked him for no reason, however Detective Martinez said Hicks told her that Hicks reported to her that he was going to see people who had a "history" with people in the neighborhood. He notes that Hicks told the dispatcher that three people approached him and started the fight — but testified at trial there were four individuals involved. He argues that it is improbable that Hicks' earlobe remained intact and fell into his hands. Also he notes that even though Hicks testified he was covering his face to prevent injuries from a baseball bat, he was not shot in his hand or arms. He notes that no bullet shell casing was found in the area by the police and Hicks' injury was not inconsistent with a bite wound. Lastly, he argues that because of Hicks' serious provocation, he should only have been convicted of aggravated assault if the trial court believed Hicks' testimony.
 {¶ 12} The State argues that the trial judge was in the best position to assess the credibility of the witnesses and the evidence supports the version presented by the victim, Herman Hicks. The State argues there is no evidence the trial judge clearly lost his way in finding Cleaver guilty of the charges against him.
 {¶ 13} Hicks said Cleaver shot a part of his ear off. Cleaver says he bit part of Hicks' ear off. Dr. Ekeh said Hicks' injury was more consistent with a blast or gunshot injury than a bite injury. Hicks' medical report and photographs suggest Hicks' injury was the result of a gunshot. If Hicks thought Cleaver bit his ear off, there appears no reason why he would not have reported that to the police. He made a 911 call in an excited state and reported he had been shot. Cleaver on the other hand admitted he lied to Detective Martinez that he did not know anything about the injury to Hicks. Officer Spencer did testify the police were unable to find a bullet in the area of the alleged shooting, and it would not be unusual to not find a shell casing as most of the casing remains in the weapon after firing. Also if Hicks had only been bitten by Cleaver, a much smaller man, it seems unlikely he would have fled from Cleaver as he did.
 {¶ 14} Lastly, police recovered a nine millimeter Beretta from beneath the couch upon which Cleaver was seated at the time of his arrest. We agree with the State that there was substantial evidence to support Cleaver's conviction and his convictions were not against the manifest weight of the evidence. Also, the trial court properly did not convict Cleaver of the lesser included offense of aggravated assault because the trial court chose to believe the testimony of Herman Hicks and there was no evidence that Hicks seriously provoked Cleaver into using deadly force against him. The trial court did not lose its way and render an unjust verdict.
 {¶ 15} In his second assignment, Cleaver contends he was denied his Constitutional right to the effective assistance of counsel because Cleaver's trial counsel did not move to suppress Hicks' identification of him. He contends the circumstances surrounding Hicks' identification of him in the photo display provided him by Detective Martinez was unduly suggestive and tainted his pre-trial and trial identification of him by Hicks. The State argues that Detective Martinez did not employ any suggestive instructions to Hicks before he, without hesitation, selected Cleaver as his assailant.
 {¶ 16} To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To demonstrate deficiency, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. The adequacy of counsel's performance is reviewed in light of all the circumstances surrounding the trial. Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the trial. State v. Cook
(1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70. Reversal is warranted only where a defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 17} We do not have in this record the photographs which were shown to Hicks by Detective Martinez. She said she obtained 120 photographs of individuals the police computer said matched Hicks' description of his assailant. Martinez did not engage in any suggestive behavior prior to Hick's identification of Cleaver's photograph. Since the identification procedure employed by the police was not suggestive, counsel was not ineffective for not challenging it. The second assignment of error is overruled. The judgment of the trial court is affirmed.
Wolff, J., and Walters, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).