[Cite as *State v. Makupson*, 2011-Ohio-2185.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                        :

    Plaintiff-Appellee           :     C.A. CASE NO. 24049

vs.                                  :     T.C. CASE NO. 09CR2380

ANDRE MAKUPSON                       :     (Criminal Appeal from
                                            Common Pleas Court)
    Defendant-Appellant          :

. . . . . . . . .

O P I N I O N

Rendered on the 6th day of May, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Laura M. Woodruff, Asst. Pros. Attorney, P.O. Box 972, Dayton, OH 45422
    Attorneys for Plaintiff-Appellee

Joe Cloud, Atty. Reg. No. 0040301, 3973 Dayton-Xenia Road, Beavercreek, OH 45432
    Attorney for Plaintiff-Appellant

. . . . . . . . .

BROGAN, J. (BY ASSIGNMENT):

{¶ 1} Andre Makupson appeals from his conviction in the Montgomery County Common Pleas Court of receiving stolen property pursuant to his no contest plea.

{¶ 2} The facts underlying this appeal are not in dispute and

the trial court's statement of the facts in resolving Makupson's suppression motion are reasonably supported by our view of the evidence.   The trial court stated the facts leading to Makupson's arrest as follows:

{¶ 3}  "On July 21, 2009, Dayton Police Officer Eric Hamby was on patrol, in a marked cruiser, wearing the uniform of the day.  He observed a red truck turn left against a red light.  Also, the red truck was missing its rear license plate.  Officer Hamby initiated a traffic stop.  The truck had three occupants, a driver (the Defendant), a passenger, and an occupant in the rear.  While stopping the vehicle, Officer Hamby observed the passenger  and rear seat occupant making furtive movements.  Hence, Hamby called for backup.  The traffic stop occurred in front of the Central State-Dayton Campus, where the Dayton Police Department has a substation located.  Backup for Officer Hamby arrived within five minutes of his request for assistance.

{¶ 4}  "When Officer Hamby walked to the truck, he observed in the truck bed large, industrial type steel pipes.  Defendant was the driver of the truck.  Defendant said and demonstrated to Officer Hamby that Defendant had the truck's rear license plate in the vehicle, it simply was not attached to the rear of the vehicle.

{¶ 5}  "The traffic stop occurred at 8:35 a.m.  Officer Hamby

called Detective Jennifer Godsey five to seven minutes later to investigate the pipes in the truck. Officer Hamby testified that the truck had been heading in the direction of A&B metal, a metal recycling business located nearby, on the other side of the bridge, on Washington Street. He also stated that the area had problems with metal thefts, though he had dealt primarily with metal thefts from residential structures, not industrial/commercial property.

{¶ 6} "The truck's passengers had no identification, so Officer Hamby had them exit the vehicle for further identification. Defendant remained in the truck. Officer Hamby was in his cruiser writing the traffic citations when Detective Godsey arrived. Defendant was not under arrest at this point. The scene was casual. The two passengers sat by a tree. At one point, Defendant got out of the truck and sat on the truck's tailgate.

{¶ 7} "Detective Godsey was assigned to the Dayton Police Department's metal theft unit. She had been at A&B Metal working when she was called to the scene of Officer Hamby's traffic stop. Detective Godsey looked at the large, commercial grade type pipes in Defendant's truck. The pipes had mud on them indicating that they may have come from a work site. The weight of the pipes was appropriate for a commercial grade truck, not Defendant's pickup truck.

{¶ 8} "Detective Godsey spoke with Defendant about the pipes

to further investigate whether they were stolen contraband. Detective Godsey was in plain clothes. Defendant initially said that the pipes came from a bridge repair in Eaton, but Defendant could not identify the person giving him the pipes nor the location of the bridge. He also indicated that it was State of Ohio scrap, and Detective Godsey knew from her work on the metal theft unit that the State did not give away scrap, but instead recycled scrap itself for the extra funds. In this conversation with Detective Godsey, Defendant eventually blurted out that he had taken the pipes, without permission, from the bridge construction site near the House of Bread, and that nobody else had been involved in taking the pipes. It had taken Detective Godsey five to seven minutes to arrive on the scene, and she spoke with Defendant for another ten to twelve minutes.

{¶ 9} "Significantly, upon Defendant's confession that he had taken the pipes without permission for the nearby bridge construction contract, probable cause arose to arrest Defendant for possessing the contraband. The open issue was the dollar value of the pipes for determining if the theft was at a felony or misdemeanor level. Detective Godsey, however, drove to the bridge construction site identified by Defendant and spoke with the construction manager and the project engineer. Those conversations confirmed that the pipes had been removed without

permission from this bridge construction site.

{¶ 10} "The project engineer, Mr. Sickman (phonetic) then went to the scene of the traffic stop with invoices and purchase orders which were used to confirm that the pipes came from the nearby bridge construction project and that the value of the pipes exceeded $500.00. At that point, Defendant was informed that he was under arrest for the pipes. Defendant was arrested between 9:30 and 10:00 a.m."

{¶ 11} Makupson moved to suppress the evidence of the stolen pipes as well as his confession. He contended the evidence was discovered by the police during a period of unlawful detention. In overruling the motion the trial court stated as follows:

{¶ 12} "Here, Officer Hamby's observation of the heavy industrial pipes in Defendant's truck bed, which was incongruent with the scene in a number of ways (commercial grade pipes, non commercial truck, truck occupants not in work uniforms, in vicinity of A&B Metal, headed towards A&B Metal, with metal thefts being a concern in the City of Dayton, for example), established objectively specific and articulable grounds for further investigation. The traffic stop could be extended for that further investigation.

{¶ 13} "Here, from the time of the traffic stop until Defendant's non-custodial statements provided probable cause for

arrest, 25 minutes to 31 minutes elapsed. Defendant was not placed under arrest, however, until the value of the pipes was confirmed, resulting in further delay of approximately an additional hour.

{¶ 14} "Under the unique circumstances presented here, the Court finds that the police had a reasonable and articulable suspicion of other criminal activity beyond the traffic stop. The prolonged stop was justified for further investigation of the circumstances. Defendant gave statements indicating that he possessed valuable property belonging to another. The police immediately took reasonable steps to verify Defendant's statements and determine more precisely the value of the stolen property. That verification process took about an hour beyond Defendant's statements. Thus, the Court finds that the officers acted appropriately, the stop was not unduly nor unreasonably delayed, and Defendant's Motion to Suppress is OVERRULED."

{¶ 15} In two related assignments of error, Makupson argues that the trial court erred as a matter of law and abused its discretion in overruling his suppression motion. Makupson argues that Officer Hamby lacked reasonable suspicion to expand the traffic stop to an investigation of whether the pipes in his truck were stolen. He contends that it is not unusual to transport raw metal pipes in an open truck in the vicinity of a scrap metal yard.

{¶ 16} For its part, the State argues that Officer Hamby did

possess articulable suspicion that the pipes in Makupson's truck were stolen. He notes that Hamby noted that the pipes were large, heavy gauge, and appeared to be industrial pipe. He explained that this type of pipe usually comes from a factory or construction site. The State notes that Hamby explained that the pipes did not appear to be residential metal typically possessed by non-commercial scrappers. Hamby also noted that Makupson's vehicle was headed in the direction of the A&B Metal Recycling business.

{¶ 17} The State also notes that shortly thereafter Detective Godsey arrived at the scene of the stop and told Hamby that the pipes were commercial grade industrial pipes. The State notes that Godsey spent two years with the specialized "metal theft" unit of the Dayton Police Department. Godsey told the trial court she immediately became suspicious of Makupson's conduct because commercial pipes are usually transported in commercial grade vehicles, not in the small pickup Makupson was driving. She also told the court that the dried mud on the pipes was consistent with the pipes' removal from a construction site.

{¶ 18} We believe the State has the better of the arguments. Hamby properly stopped Makupson for the traffic violations. Officer Hamby already had reasonable suspicion to believe Makupson was transporting stolen industrial pipes. In light of his

suspicion, it was reasonable for Hamby to call for the expertise Officer Godsey could provide in the investigation. The United States Supreme Court has declined to impose a rigid time limitation on *Terry* stops or to establish per se rules. See *United States v. Sharpe*, (1985), 470 U.S. 675. In *Sharpe*, the Court held that a twenty minute detention was not unreasonable where the police diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly. In *State v. Cook*, (1992), 65 Ohio St.3d 516, the Ohio Supreme Court held that fifteen minutes was not too long where it elapsed while awaiting another officer who could confirm whether the suspect was the person to be arrested.

{¶ 19} The Supreme Court of Louisiana upheld a brief detention of individuals suspected of stealing copper wire. See *State v. Fauria*, (La. 1981), 393 So.2d 688. In that case, New Orleans Police Officer Richard Dugas observed three defendants near a spool of cable lying on the ground. The officers observed that the three men had a cable cutter and were transferring pieces of cable into the rear of a pickup truck. Recalling a complaint of a theft of copper cable made earlier by the Harbor Police, Officer Dugas held the men until a Harbor police officer could come to the scene and verify whether the cable was similar to the cable reported stolen. A Harbor policeman responded to the scene shortly thereafter and after identifying the stolen cable arrested the suspect.

{¶ 20} In the matter before us, the trial court found that 25-31 minutes elapsed between Hamby's initial stop of Makupson's truck and the statement giving rise to probable cause for his arrest. Hamby did not approach Makupson's truck until five minutes after he stopped the vehicle so his backup officers could arrive on the scene. Hamby had probable cause to issue a traffic citation to Makupson and this typically takes fifteen minutes. Because Hamby immediately became suspicious about the stolen property offense he called the dispatcher to have Godsey come to the scene. Hamby testified she arrived within ten minutes after his call while he was writing a number of traffic citations for Makupson. Godsey arrived at the scene and after Makupson admitted he had taken the pipes without permission, she had probable cause to arrest him. Makupson's admission was made during a period of lawful detention and the pipes were likewise lawfully recovered and seized during that lawful period. The appellant's assignments of error are Overruled.

{¶ 21} The judgment of the trial court is Affirmed.

FAIN, J. And HALL, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Laura M. Woodruff, Esq.
Joe Cloud, Esq.
Hon. Mary Lynn Wiseman