OPINION
{¶ 1} Timothy L. Cook was found guilty by a jury in the Champaign County Court of Common Pleas of aggravated burglary, telecommunications harassment, and attempted felonious assault. Cook was sentenced to three years of imprisonment for the aggravated burglary, to three years for attempted felonious assault, and to six months for telecommunications harassment, all to be served concurrently. He appeals from his conviction.
 {¶ 2} Most of the facts are undisputed. Cook had been in a relationship with Julie Kielich for several months but, by the fall of 2001, the relationship had cooled, especially on Kielich's part. She was no longer interested in dating Cook exclusively, but she was having trouble telling Cook this fact because of numerous hardships he had suffered, including the losses of his job and house and the death of his mother. On the Friday of Thanksgiving weekend, 2001, Keilich went to the zoo with her ex-husband and her children. She had told Cook that she would call him when she got home, but she went out with some friends instead. Cook showed up at the bar where Keilich and her friends had gone that evening. Seeing Cook at the bar frightened Keilich because Cook was a recovering alcoholic and did not usually go to bars. She hid in the bathroom until Cook left, but he was later seen looking in the bar's windows.
 {¶ 3} Kielich and her friends left the bar around 1:30 a.m. Before heading to Kielich's house, they went past Cook's house to see if he had gone home, and his car was not there. They then checked a couple of other bars and Kielich's house attempting to locate Cook. Because Cook did not seem to be at Kielich's house, a friend dropped Kielich off there. Kielich went into the house as discreetly as possible so that it would not be obvious that she was home. Kielich testified that, at this point, she had not been afraid that Cook would harm her but had wanted to avoid a verbal altercation with him.
 {¶ 4} When Kielich entered her home she had numerous messages from Cook on her answering machine. She described these messages as "mean and hateful and disgusting and repulsive." Cook also called and left more messages while Kielich listened, and he told her he knew she was home because he had watched her. She then answered some of the subsequent calls but would hang up on Cook when he "would get belligerent." Cook admitted that he had been drinking, at which point Kielich "knew that [she] was in trouble" because she would not be able to reason with him. Because Kielich had caller ID, she knew that Cook had left his home during the course of these numerous phone calls and had started to use his cell phone.
 {¶ 5} Cook arrived at Kielich's house but left when she would not let him in. He then parked his car up the street and returned to the house on foot. Cook shattered Kielich's bedroom window with a metal chair that had been on the porch and climbed into the house through the window. When Kielich realized what was happening, she ran through the house, into the garage, and opened the garage door to escape. Cook, who had seriously injured his foot on broken glass as he climbed through the window, chased Kielich through the house, knocking over furniture as he went, and out onto the driveway. Cook grabbed Kielich by the hair and threw her to the ground. According to Kielich, he then repeatedly kicked her about the head. Cook claims that he punched Kielich but did not kick her. After a short time, Cook fell down because of the injury to his foot, and Kielich was able to move a short distance away. The police arrived because of a call from one of the neighbors. Cook was taken for medical treatment and was later arrested.
 {¶ 6} Cook was charged by bill of information with aggravated burglary, felonious assault, and telecommunications harassment. Following a jury trial, he was found guilty of aggravated burglary and telecommunications harassment as charged and of the lesser included offense of attempted felonious assault. He was sentenced as described supra.
 {¶ 7} Cook raises four assignments of error on appeal.
 {¶ 8} "I. Appellant was denied a fair trial due to the ineffective assistance of counsel."
 {¶ 9} Cook claims that his attorney acted ineffectively in allowing the admission of bad acts evidence against him, in failing to file a motion to suppress, and in objecting only three or four times at trial.
 {¶ 10} We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052 and adopted by the Supreme Court of Ohio in State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 11} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance.Strickland, 466 U.S. at 688, 104 S.Ct. at 2064-2065. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id., 466 U.S. at 687,104 S.Ct. at 2064. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. State v. Cook (1992), 65 Ohio St.3d 516,524. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id. at 524-525.
 {¶ 12} The "bad acts" about which evidence was presented and to which Cook refers under this assignment of error are not so much the type of "crimes, wrongs or acts" referred to in Evid.R. 404(B) as they are the circumstances of his life at the time of this incident. Cook had been fired from his job, had been at risk of losing his house, and had been a long-term recovering alcoholic who had just begun to drink again. He had also filed for bankruptcy and had a somewhat strained relationship with his daughters. None of these circumstances is a criminal act or tends to show a predisposition toward the conduct that was involved in this case. As such, this is not the type of evidence prohibited by Evid. R. 404(B). Moreover, Cook's attorney could have reasonably believed that evidence of the stress he had been under prior to the attack would make the jury sympathetic to Cook. Likewise, the testimony by Cook's ex-wife that "[h]e's a different person when he's been drinking" might have evoked some compassion from the jury when considered along with the undisputed fact that Cook had been sober for many, many years prior to November 2001. Counsel's conduct did not fall below an objective standard of reasonableness in failing to object to this testimony.
 {¶ 13} Cook also claims that his attorney failed to object to numerous other instances of "hearsay" testimony that were prejudicial to him. In our view, however, much of this testimony was not, in fact, hearsay. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Evid.R. 801(C). Kielich's testimony that her friends had been afraid for her based on the way Cook had acted at the bar did not convey a statement made by any of her friends, and therefore did not satisfy the definition of hearsay. Moreover, even if it could be construed as a statement, the testimony was not offered to prove the truth of the matter asserted but to explain the women's conduct at the bar in urging Kielich not to talk with Cook. Similarly, Kielich's own statement that she "knew she was in trouble" when she realized that Cook had been drinking was not an out of court statement, and therefore it was not hearsay. Rather, it was descriptive of her reasonable — and accurate — reaction to her discovery that a known alcoholic had started drinking again and an acknowledgment that his behavior could no longer be predicted.
 {¶ 14} Other statements to which Cook contends his attorney should have objected fell within an exception to the hearsay rule. Kielich's neighbors and a police officer testified that Kielich had been yelling that Cook had broken into her house and beaten her up while the police were arriving on and attempting to secure the scene. An objection to these statements on hearsay grounds would have been properly overruled because the statements fell under the excited utterance exception to the hearsay rule. Evid.R. 803(2). Therefore, counsel did not act ineffectively in failing to object to this testimony.
 {¶ 15} Cook further contends that his attorney should have sought to suppress statements that he made to the police prior to his arrest on the basis that he had not been advised of his rights. The brief refers to "an unmirandized statement given * * * when [Cook] was awaiting a Careflight" from one hospital to another. During this exchange, Cook told a deputy that he had hurt his foot climbing through the broken window and that he had intended to hurt Kielich the way that she had hurt him but had not intended to kill her.
 {¶ 16} There are two weaknesses in Cook's argument that his attorney should have sought to suppress these statements. The first weakness is that it is unclear whether any of the statements at issue resulted from questioning by the police officer. The deputy's version of events suggests that Cook offered information without necessarily being asked. The deputy's version also indicates that he had not gone to the hospital for the purpose of questioning Cook, but that he had been at the hospital checking on the victim of another crime and, as such, had offered to check on Cook's condition. The second weakness in Cook's argument is that he was not in custody when the statements in question were made. He was transported to both hospitals unaccompanied by law enforcement officers, and neither hospital was given any instructions restricting his release. Cook was not arrested until late the next day. If Cook was not in custody, the authorities were not required to advise him of his rights. See Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602. For these reasons, counsel did not act ineffectively in failing to attempt to suppress these statements.
 {¶ 17} Finally, Cook claims that there was "no earthly reason" for defense counsel to call him to the stand. He claims that his testimony provided no benefit to the defense and actually benefitted the state. We cannot say with any certainty, of course, what effect defense counsel hoped that Cook's testimony would have on the jury or what effect it did have. However, counsel could have reasonably believed that Cook would come across as sympathetic to the jury because he was remorseful, genuinely seemed to have loved Kielich, and had been through a rough period in his life. We cannot say that it was objectively unreasonable for defense counsel to have called Cook to the stand.
 {¶ 18} Based on our review of the record, we are confident that Cook was not denied the effective assistance of counsel.
 {¶ 19} The first assignment of error is overruled.
 {¶ 20} "II. The trial court erred in admitting non-probative evidence of prior bad acts."
 {¶ 21} We discussed the "bad acts" evidence under the first assignment of error, and we rely on that discussion here.
 {¶ 22} The second assignment of error is overruled.
 {¶ 23} "III. The evidence against the appellant is insufficient as a matter of law and his conviction is against the manifest weight of the evidence."
 {¶ 24} Cook claims that his aggravated burglary conviction was not supported by the evidence because there was no evidence that he intended to commit a criminal offense inside the house. He points out that the altercation actually occurred in the yard.
 {¶ 25} Aggravated burglary is defined, in pertinent part, as trespass in an occupied structure with purpose to commit any criminal offense in the structure if the offender inflicts or attempts to inflict physical harm on another. R.C. 2911.11. From the evidence presented, the jury could have reasonably inferred that Cook intended to harm Kielich in the house when he entered the house. The fact that Kielich fled to the yard, and was therefore harmed in the yard rather than in the house, does not alter the purpose with which Cook began. This assignment of error is without merit.
 {¶ 26} Although Cook's assignment of error refers to the weight of the evidence, he does not advance an argument in this respect. We do not find his conviction to be against the manifest weight of the evidence.
 {¶ 27} The third assignment of error is overruled.
 {¶ 28} "IV. All of the errors committed at trial combined to deprive appellant of a fair trial."
 {¶ 29} Because we have found the alleged errors to be without merit in our discussions of the assignments of error, supra, we likewise find that there was no cumulative error.
 {¶ 30} The fourth assignment of error is overruled.
 {¶ 31} The judgment of the trial court will be affirmed.
GRADY and YOUNG, JJ., concur.