OPINION
{¶ 1} Defendant-Appellant Steven Inskeep appeals his convictions for cultivating marijuana and tampering with evidence. For the following reasons we affirm the judgment of the trial court.
 {¶ 1} On September 11, 2002 Dwight Aspacher was working as an undercover investigator in the marijuana eradication program of the Ohio Bureau of Criminal Identification and Investigation. While flying in a helicopter over property located at 10257 East U.S. Route 36 in Champaign County, he spotted marijuana growing behind a trailer. He radioed to officers on the ground, who recovered the contraband and left the property.
 {¶ 2} In the meantime, Aspacher's helicopter had returned to the airport for refueling. After taking off, Aspacher again flew over the property to continue searching, as marijuana is often found growing in more than one location on the same property. There Aspacher found Inskeep cutting down more marijuana plants. As the helicopter approached, Inskeep laid flat on the ground for several minutes. Aspacher radioed to the officers on the ground about what he had seen, and the officers headed back to the property. Before they returned, Inskeep crawled out of the area in which he had been cutting and then stood up and started walking away. When Inskeep saw the police cruiser pull up, he ran inside a barn. Soon after, Inskeep came back out and surrendered to Deputy Chuck Arnold.
 {¶ 3} Arnold patted Inskeep down and put him in the cruiser after Arnold voluntarily turned over a knife that was found to have vegetation around the handle. Arnold started to read Inskeep his Miranda warnings, when Inskeep blurted, "I thought you guys left. . . . the helicopter — I thought it left. All I was trying to do was cut down my plants. * * * I'm allowed to grow four or five plants in the State of Ohio for my own use."
 {¶ 4} Inskeep was cooperative during the rest of the investigation. After signing a waiver of his rights, Inskeep consented to a search of the property, including the barn in which he lived. He acknowledged that the officers would find marijuana, seeds, and drug paraphernalia. Inskeep had lived alone on the property for five or six years.
 {¶ 5} The deputies recovered marijuana plants from three different locations on the property, all of which were near buildings, but out of sight of the driveway and hidden by overgrown foliage. The patch that Inskeep was cutting down was growing among pokeweeds, which have purple berries. Inskeep's pants had a large purple stain on them.
 {¶ 6} The recovered plants weighed 3,227 grams. Many of the plants had root balls, indicating that they had been intentionally started in pots and transplanted outside, in contravention of Inskeep's claim at trial that the marijuana was growing wild on the property.
 {¶ 7} On December 19, 2002 Inskeep was indicted on one count each of: cultivating marijuana; tampering with evidence; possession of marijuana; and possession of drug paraphernalia. The possession of marijuana charge was handled in municipal court prior to the remaining charges going to trial. The jury found Inskeep guilty as charged of cultivating marijuana and tampering with evidence, but not guilty of possession of drug paraphernalia. The trial court sentenced Inskeep to three years' imprisonment. Inskeep now appeals.
 Inskeep's first assignment of error: {¶ 8} "The conviction of Steven L. Inskeep on the charge of cultivation of marijuana was against the manifest weight of the evidence."
 Inskeep's second assignment of error: {¶ 9} "The conviction of Steven L. Inskeep on the charge of tampering with evidence was against the manifest weight of the evidence."
 {¶ 10} In his first two assignments of error, Inskeep argues that his convictions were against the manifest weight of the evidence because the State failed to show that he knowingly cultivated the marijuana; that he knowingly altered, destroyed, or concealed the marijuana plants; or that he knew that there was an investigation in progress. To the contrary, we find that the State presented sufficient evidence to support Inskeep's convictions.
 {¶ 11} When reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 12} Inskeep was convicted of cultivating marijuana in violation of R.C. § 2925.04(A), which simply states that no person shall knowingly cultivate marijuana. The statute defines "cultivate" to include planting, watering, fertilizing, or tilling. R.C. § 2925.01(F). He was also convicted of tampering with evidence in violation of R.C. § 2921.12(A)(1), which states that "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."
 {¶ 13} Inskeep's argument centers on the scarcity of the State's direct evidence. However, he conveniently overlooks the significant circumstantial evidence that the State offered, including Inskeep's own incriminating statement. Circumstantial evidence possesses the same probative value as direct evidence, and it must be subjected to the same standard of proof. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph 1 of the syllabus.
 {¶ 14} The marijuana was found growing on property under Inskeep's control. The plants were located in three specific places, located next to buildings, not randomly spread around. Inskeep had lived alone on the property for five or six years, and both of the vehicles found on the property were registered to him. While the concealed locations of the marijuana alone could be an indication that Inskeep was unaware of the plants, the remaining evidence demonstrated that he not only knew of their presence, but that he cultivated the illegal substance.
 {¶ 15} Inskeep's behavior supported the jury's finding that he was knowingly cultivating the marijuana and that he was attempting to destroy evidence not seized during the officers' first visit. He knew that law enforcement officials use helicopters to look for marijuana. After the helicopter left for the first time, Inskeep headed out to destroy plants that had not yet been discovered. When the helicopter returned, he tried to sneak away. He ran and hid when police on the ground arrived to seize the second group of plants.
 {¶ 16} After Inskeep turned himself over to police, he volunteered a knife that was found to have vegetation near the handle and had presumably been used in cutting down the plants. Furthermore, Inskeep had a purple stain on his pants that was consistent with the berries on the pokeweeds growing among the marijuana plants.
 {¶ 17} It also was established at trial that Inskeep was good at raising plants, and he knew what marijuana plants looked like. Moreover, after he consented to a search of the property, officers found 111.44 grams of marijuana, pipes, and marijuana seeds inside the barn in which he lived. Significantly, the State offered evidence that some of the plants had root balls, rather than an open root system, which indicated that the plants had been started in pots and transplanted outside. They were not the result of birds or wind randomly dropping the seeds.
 {¶ 18} Perhaps most telling of all was Inskeep's blurted statement, "I thought you guys left. . . . the helicopter — I thought it left. All I was trying to do was cut down my plants. * * * I'm allowed to grow four or five plants in the State of Ohio for my own use." This statement illustrates both that Inskeep knowingly cultivated the marijuana and that he was tampering with evidence.
 {¶ 19} The State offered sufficient evidence regarding every element of each crime in order to support both of Inskeep's convictions. Therefore, we cannot say that it is patently apparent that the factfinder clearly lost its way, and we will not disturb the verdict. Inskeep's first two assignments of error are without merit and are overruled.
 Inskeep's third assignment of error: {¶ 20} "The trial court erred to the prejudice of the appellant by permitting a question to be asked by a juror that is biased and argumentative in tone, and not relevant to a material issue in the case."
 {¶ 21} In his third assignment of error, Inskeep claims that the trial court erred in asking a particular question from the jury of one witness because the question was irrelevant and argumentative. After each witness testified, the judge and counsel reviewed questions submitted in writing by the jury to be asked of that witness, and some of those questions were put to the witness. Here the disputed question was asked of defense witness Cole Compton: "Do you have a tendency to believe everything your friends tell you no matter what other sources may tell you?" After a careful review of the record, we find that when reviewed in context the question was not argumentative, and it was relevant to the defendant's line of questioning of Compton.
 {¶ 22} The admissibility of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph 1 of the syllabus. An appellate court will not disturb a trial court's ruling on admissibility absent an abuse of that broad discretion. Id. at 182. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 177, 404 N.E.2d 144.
 {¶ 23} Compton was allowed to testify about Inskeep's claim that he was being prosecuted as part of a conspiracy to deprive him of his property and business. Moreover, Compton appeared to agree with Inskeep, despite the lack of any independent information in support of his claim. Once this testimony was allowed, the State was entitled to attack Compton's credibility. It is not surprising, then, that the jury wondered how Compton came to his conclusion regarding the supposed conspiracy.
 {¶ 24} In this context, the question "Do you have a tendency to believe everything your friends tell you no matter what other sources tell you?" was not argumentative. Nor, contrary to Inskeep's claim, is there any evidence in the record that the jury intended to ridicule the witness. Instead, the question was a valid method of learning whether Compton reaches his own conclusions about what a friend tells him, or if he just assumes it to be true. Thus, the question went directly to Compton's credibility.
 {¶ 25} Because the trial court did not abuse its discretion in allowing the question, Inskeep's third assignment of error is overruled.
 Inskeep's fourth assignment of error: {¶ 26} "The appellant was denied a fair trial in that he did not receive the effective assistance of counsel, in violation of his rights under the sixth and fourteenth amendments to the united states constitution."
 {¶ 27} Finally, Inskeep insists that he was denied the effective assistance of trial counsel because counsel failed to move for acquittal pursuant to Crim.R. 29 and because counsel failed to adequately prepare defense witness Terry Jaworski for questioning.
 {¶ 28} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time.State v. Cook (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 29} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 30} First, Inskeep argues that trial counsel was ineffective because he failed to move for acquittal. However, in light of our determination in the first two assignments of error that his convictions were not against the manifest weight of the evidence, we cannot find that counsel's failure to move for acquittal rises to the level of ineffective assistance of counsel. See, e.g., City of Defiance v. Cannon (1990),70 Ohio App.3d 821, 826-27, 592 N.E.2d 884; State v. Fields (1995),102 Ohio App.3d 284, 288-89, 656 N.E.2d 1383.
 {¶ 31} Second, Inskeep insists that counsel was ineffective because he failed to properly prepare Mr. Jaworski for cross-examination. The primary point of the testimony was to show that it is not uncommon for marijuana to grow from seeds dropped by the wind or birds, without being planted by humans. And, in fact, Mr. Jaworski was able to provide that information. It was obvious that counsel did spend time preparing the witness for his direct testimony in court.
 {¶ 32} On cross-examination, however, it became clear that the defense had not shared all of the facts of the case with the witness. For example, Mr. Jaworski was not aware that Inskeep had been seen cutting marijuana plants down or that marijuana and seeds were found in his home. Perhaps this was a strategy by trial counsel to limit the scope of the witness' testimony. Or maybe the importance of sharing this information was not apparent until after the State's witnesses testified, at which time there was no time for further preparation of the witness. Whatever the motivation for counsel's strategy, while in hindsight it clearly would have been better to have advised Mr. Jaworski of all of the facts from the outset, we cannot find that his election not to do so rises to the level of ineffective assistance of counsel.
 {¶ 33} Accordingly, Inskeep's fourth assignment of error fails.
 {¶ 34} Having overruled all four of Inskeep's assignments of error, the judgment of the trial court is affirmed.
Fain, P.J. and Grady, J., concur.