**[Cite as *State v. Bush*, 2016-Ohio-5347.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2015-CA-65 |
| | : | |
| v. | : | T.C. NO. 15CR370; 15CR477 |
| | : | |
| KYLE P. BUSH | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the ___12th___ day of ____August____, 2016.

. . . . . . . . . . .

STEPHANIE R. HAYDEN, Atty. Reg. No. 0082881, Assistant Prosecutor, 61 Greene Street, Xenia, Ohio 45385
     Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} After a jury trial in the Greene County Court of Common Pleas, Kyle P. Bush was found guilty of offenses in two cases that were tried together. In Case No. 2015-CR-370, Bush was found guilty of one count of felonious assault (with a firearm specification), two counts of failure to comply, and two counts of having weapons while

under disability. In Case No. 2015-CR-477, he was found guilty of one count of aggravated possession of drugs. Bush was sentenced to an aggregate prison term of 12½ years. Bush appeals, arguing that he was denied his constitutional right to the effective assistance of counsel at trial. For the following reasons, the judgment of the trial court will be affirmed.

## I. Facts and Procedural History

{¶ 2} Christina Parsons met Bush through a mutual friend, and they began "hanging out" in January 2015. Within a short time, the pair became boyfriend and girlfriend. However, by April 2015, Parsons felt that "things started getting bad" between them, they "weren't agreeing on anything," and Parsons sought to end the relationship. Throughout this time, Parsons was working as a dancer and bartender at a "strip club." In early May 2015, Parsons and her young daughter moved in with Parsons's lifelong friend, Kristen Hamilton, and Hamilton's three children at a home in Beavercreek.

{¶ 3} According to Parsons's testimony, in the early morning hours of June 28, 2015, as she was leaving work and getting a ride home with a friend, one of her friends saw Bush parked outside the club. After seeing him, Parsons's friend did not take her directly home from work; rather, the women tried to "lose" Bush and then got something to eat. Parsons arrived at Hamilton's home around 5:00 a.m. The front door of the home could not be locked at that time because the lock was broken.

{¶ 4} Parsons went into the bedroom where her daughter was sleeping, began checking messages on her phone, and noticed that she had several messages from Bush. Before she could listen to the messages, the dogs in the home began barking; Parsons had a "bad feeling" and went to investigate. Parsons found Bush inside the front

door with a silver gun in his hand. Bush told Parsons to come with him or he would "hurt everybody in the house." Parsons complied, and Bush pushed her out of the house while holding her by the back of her neck.

{¶ 5} Bush and Parsons left Parsons's residence in Bush's car. He "drove crazy" while questioning Parsons, went through a McDonald's drive-thru, and, at one point, fired a shot out of the car window using a second gun that had been in the vehicle. Bush had the silver gun in his hand or on his lap throughout the drive. He also hit Parsons with his hand and watch, opening a previous wound on her forehead, and "poked" her with the gun.

{¶ 6} As Bush continued to drive around with Parsons, he received several calls on his cell phone; some originated from Parsons's cell phone, which she had left at the house. Some of the calls to Bush were from Hamilton, who was concerned when she woke up at 8 or 8:30 a.m. and found that Parsons's child, her purse and her phone were at the house, but Parsons was not. Hamilton testified that she called Bush after reviewing the most recent calls to Parsons's phone. Although Hamilton did not understand at that time what was happening between Parsons and Bush, she was concerned about the text messages she had seen on Parsons's phone and the fact that Parsons was not at the house in the morning. Hamilton testified that, when she reached Bush and Parsons, she threatened to call the police, and Bush then returned Parsons to Hamilton's house. Shortly thereafter, Hamilton did call the police and reported how Bush had taken Parsons from the house.

{¶ 7} After the police obtained a description of Bush and his vehicle, Bush was observed in his car a short distance from the house. Two officers attempted to

coordinate a traffic stop, but when Bush saw the cruisers behind him, he ran a red light. A high-speed pursuit began. The officers followed Bush for two to three miles through several intersections and a construction zone. The car chase ended when Bush rear-ended another vehicle that had pulled to the side of the road due to the approaching sirens. Bush fled on foot and was chased by officers through several yards and back into the construction zone. Bush was arrested after he was located hiding behind a bush.

{¶ 8} Following Bush's arrest, the police found two handguns in the car from which he had fled. They also found a white substance in his pants pocket that later proved to be methamphetamine.

{¶ 9} On July 10, 2015, Bush was indicted in Case No. 2015 CR 370 on one count each of abduction and felonious assault (each with a firearm specification), two counts of failure to comply with an order or signal of a police officer, two counts of having weapons while under disability, and one count of intimidation of an attorney, victim, or witness in a criminal case. On August 28, 2015, in Case No. 2015 CR 477, he was charged with an additional count, aggravated possession of drugs. At the State's request and in the absence of an objection by Bush, the trial court joined the cases for trial.

{¶ 10} The cases were tried to a jury in September 2015. After the State presented its case, the trial court granted Bush's motion for a judgment of acquittal on the count of intimidation of a witness. The defense did not call any additional witnesses. The jury found Bush not guilty of abduction, but guilty of felonious assault (with a firearm specification), two counts of failure to comply, two counts of having weapons while under disability, and aggravated possession of drugs.

{¶ 11} The trial court sentenced Bush to two years for felonious assault, with a

three-year firearm specification, to 18 months and 36 months respectively for failure to comply, to 36 months each for having weapons under disability, and to 36 months for aggravated possession of drugs. The trial court ordered that the counts of felonious assault, the firearm specification, and the counts of failure to comply be served consecutively (totaling 9½ years). The court ordered that the counts of having weapons under disability be served concurrently to one another but consecutively to the other counts. The count of aggravated possession of drugs was ordered to be served concurrently with the other counts. Thus, the aggregate sentence was 12½ years.

## II. Ineffective Assistance of Counsel

{¶ 12} On appeal, Bush raises one assignment of error:

**Appellant's trial counsel provided ineffective assistance, resulting in prejudice to Appellant.**

{¶ 13} In general, we review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688.

{¶ 14} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the trial would have been different. *See id.; Bradley* at 142. Hindsight is not permitted to distort the assessment of what was

reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook,* 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker,* 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

{¶ 15} Bush asserts that counsel's ineffectiveness was apparent during the direct examinations of Parsons and of Detective Vincent Amato, who investigated the case and interviewed Bush. These witnesses testified to alleged prior bad acts by or convictions of Bush and his previous imprisonment, which he claims were unfairly prejudicial to him and were inadmissible under Evid.R. 404(B).

{¶ 16} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Ohio Supreme Court has discussed Evid.R. 404, stating:

> Evid.R. 404 codifies the common law with respect to evidence of other acts of wrongdoing. The rule contemplates acts that may or may not be similar to the crime at issue. If the other act is offered for some relevant purpose other than to show character and propensity to commit crime, such as one of the purposes in the listing, the other act may be admissible. *Id.* Another consideration permitting the admission of certain other-acts evidence is whether the other acts "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment" and are "inextricably related" to the crime.

(Citations omitted.) *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 13.

*Detective Amato*

**{¶ 17}** In his testimony, Detective Amato described that he responded to Soin Medical Center to interview a suspect and was given some background information by the officer in charge, Officer David Majercak, who was also at the hospital at that time. Det. Amato then talked with Bush and determined that the versions of events that he had been told by Majercak and Bush "were on completely different ends of the spectrum."

**{¶ 18}** Det. Amato testified to statements made to him by Bush at the hospital. Specifically, Amato testified that, according to Bush, Parsons's wounds to her forehead were from "rough sex." Bush further stated that he "had beat her ass before," but he could not understand "why she would be saying the things she had" on this occasion. Amato also testified, in response to a question from the prosecutor, that, by way of background information, Bush had admitted that he was a "recent felon" and had "done a stint of ten years for an engaging charge." Amato stated that he had already been aware of this prior offense before he talked with Bush.

**{¶ 19}** Bush claims that this testimony was inadmissible and that trial counsel "stood by [and] failed to object" to these statements, in violation of Bush's right to the effective assistance of counsel. The fact of a prior conviction and imprisonment was not disputed. Bush's trial counsel raised it during voir dire and, in opening statement, said Bush "had returned to the community after being locked up." Additionally, prior to Det. Amato's testimony, defense counsel and the State had stipulated in front of the jury that Bush had "been previously convicted of an offense of violence, specifically burglary," and

as a result, he had a legal "disability" which prohibited him from possessing firearms.

{¶ 20} We agree with Bush that Det. Amato's statements about Bush's prior conviction were irrelevant, potentially prejudicial, and objectionable. If an objection had been made, we presume that the trial court would have sustained the objection, and a curative instruction to the jury may have been given. However, in addressing an argument based on the ineffective assistance of counsel, the question is not whether the evidence was erroneously admitted, but whether trial counsel's failure to object fell below an objective standard of reasonableness and whether the failure to object was serious enough to create a reasonable probability that, but for the error, the outcome of the trial would have been different.

{¶ 21} We recognize that, in some respects, Det. Amato's statement went beyond the stipulation about Bush's previous conviction. For example, Amato indicated the length of Bush's prison sentence, which may have affected the jurors' assessments of the seriousness of the previous offense. He also identified the prior offense as "engaging," rather than burglary (as referenced in the stipulation).[1] Amato's reference to the prior offense and the length of the sentence was inappropriate and possibly confusing to the jury. However, because the jury was already aware that Bush had committed a prior violent offense, we cannot conclude that a reasonable probability exists that counsel's failure to object to Amato's statements affected the outcome of the trial. We also note that the court instructed the jury, pursuant to Ohio Jury Instructions 207.09, as to the

---

[1] Although the reason for this discrepancy is not apparent from the record, our Opinion in *State v. Bush*, 2d Dist. Greene No. 2004-CA-106, 2005-Ohio-4492, which related to Bush's prior conviction, indicated that he was convicted of both engaging in a pattern of corrupt activity and four counts of burglary, as well as other offenses.

limited use of evidence of the prior conviction. Bush has failed to establish that counsel acted ineffectively with respect to Amato's statement about his prior conviction and sentence.

*Christina Parsons*

**{¶ 22}** With respect to the testimony of Parsons, Bush argues that counsel acted ineffectively in failing to highlight inconsistencies in Parsons's testimony about when she had received scars or scabs on her head in an altercation with Bush, failing to explore whether Parsons "enjoyed 'rough sex,' " and failing to ask Parsons when she and Bush had last engaged in "rough sex." (Bush told a police officer at the time of his arrest that he and Parsons had had rough, but, impliedly, consensual, sex in his car after she left her house with him on June 28.) Additionally, he asserts that counsel should have highlighted Parsons's opportunities to escape from the car and her failure to do so, and should not have asked questions of Parsons which elicited responses about his prior convictions.

**{¶ 23}** Parsons testified that, before she left the house with Bush on June 28, she had a scab on the top of her forehead, and that this scab reopened when Bush hit her in the head in the car; she also indicated that she had at least one new injury to her forehead as a result of her June 28 encounter with Bush. Parsons expressed some uncertainty about the origin of each mark on her forehead (as shown at trial in pictures), saying "[t]hey could be from now or before, because, I mean, it was not very long in between times of him putting his hands on me." Parsons also testified that she broke up with Bush in April 2015 because he "started putting his hands on [her]" and "beat the shit out of [her]," which led to her hiding in her room for a week because she did not want anyone to see her face.

When asked if the scab on her forehead at the time of the June 28 incident was from "the time in April," Parsons said, "No, it wasn't. Wait. It was May." Neither the prosecutor nor defense counsel further clarified this timeline or Parsons's reference to something happening in May, nor did they explore the specific nature of the relationship between Parsons and Bush between April (the time of the alleged break-up) and the incident on June 28.

{¶ 24} Bush argues on appeal that his trial counsel was ineffective in failing to "explore this obvious inconsistency" in Parsons's testimony, to clarify whether Parsons had engaged in "rough sex" with Bush consensually (and, if so, when) and whether the marks on Parsons's face could have resulted from such activity on or around the date of the offense. Bush asserts that trial counsel could have impugned Parsons's credibility by asking such questions.

{¶ 25} Although Parsons's testimony left some openings for additional questions and clarification, it was a reasonable trial strategy for counsel to refrain from exploring these matters further. Although Parsons might have answered that she and Bush had engaged in "rough sex" after their April break-up, she might have denied this version of events. Moreover, this line of questioning would have risked eliciting testimony that highlighted other occasions on which Bush had inflicted injury on Parsons by "putting his hands on [her]" or "beat[ing] the shit out of [her]." Such testimony might well have been detrimental to Bush's theory of the case. We cannot conclude that trial counsel acted ineffectively in failing to pursue a line of questioning about how and when Parsons incurred the injuries that were "reopened" on the date of these offenses.

{¶ 26} Additionally, Bush argues that counsel should have objected to references

in Parsons's testimony to Bush's prior bad acts, namely, his beating her in the past and her knowledge that he was on parole when they were dating. We discussed Parsons's references to prior violence above; she cited this conduct as the basis for the couple's break-up. Parsons's testimony did not dwell on these incidents for an extended period, and counsel may have had strategic reasons for not attempting to clarify – and thereby placing greater focus on -- these statements.

{¶ 27} Parsons's statements that she knew, when she met Bush, that he had been in prison, and that she had "figured * * * out" soon thereafter that Bush was on parole, were elicited by defense counsel on cross-examination. Defense counsel followed up with questions about whether Parsons viewed Bush as a "bad boy" and whether she found that "kind of exciting." (Parsons responded that she had not found that particularly exciting, that most of the men in her life had been in prison, and that it was "not anything new" to her.) On appeal, Bush argues that, by pursuing this line of questioning, his attorney was "performing ineffectively in a proactive manner," i.e., he was eliciting prejudicial testimony himself.

{¶ 28} We are unpersuaded that Parsons's testimony about her knowledge of Bush's time in prison and on parole was unfairly prejudicial to him. This testimony seems to have been part of defense counsel's strategy to suggest to the jury that Parsons knew of, and had no problem with, Bush's violent past, that she willingly engaged in "rough sex" with him, that some of her injuries had resulted from consensual rough sex, rather than non-consensual violence, and that Parsons had gone with Bush willingly, perhaps to engage in sex. Although this strategy was not successful in preventing Bush's conviction of felonious assault, he was found not guilty of abduction.

**{¶ 29}** Finally, Bush argues that trial counsel was ineffective in that he did not use a McDonald's receipt found in Bush's car after the offense to impugn Parsons's testimony about whether she was held in Bush's car against her will. It was undisputed that, while driving around with Parsons in the car on the morning of June 28, Bush drove through a McDonald's drive-thru and ordered some food. The receipt confirmed a purchase at McDonald's during the relevant timeframe. Bush claims that, if Parsons were really in the car against her will, she could have gotten away from Bush at the drive-thru and found "sanctuary" "in full view of many witnesses." Bush also argues that he could not have held a gun to Parsons or detained her against her will while also ordering and paying for food. Bush claims that counsel was ineffective in failing to "capitalize" on these arguments.

**{¶ 30}** The questions raised by Bush on appeal about whether the trip through the McDonald's drive-thru might have presented an opportunity to Parsons to escape may have also occurred to the jury, but we cannot conclude that counsel's failure to pursue this line of questioning fell below an objective standard of reasonableness. In fact, this choice was likely a matter of trial strategy, and it is worth noting again that Bush was acquitted of the abduction charge. Questioning of Parsons about why she did not attempt to escape at the drive-thru would likely have elicited additional statements about her fear of Bush based on his past violence to Parsons or additional evidence about his use of the gun in a threatening manner. Counsel could have reasonably concluded that the risk posed by this line of questioning outweighed its potential benefit.

**{¶ 31}** For these reasons, we conclude that trial counsel did not act ineffectively in his representation of Bush. The assignment of error is overruled.

### III.    **Conclusion**

**{¶ 32}**   The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and HALL, J., concur.

Copies mailed to:

Stephanie R. Hayden
Jeffrey T. Gramza
Hon. Stephen A. Wolaver