[Cite as *State v. Bozarth*, 2021-Ohio-14.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2020-CA-21 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2019-CR-534 |
| v. | : | |
| | : | (Criminal Appeal from |
| GENE A. BOZARTH | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of January, 2021.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

ALAN D. GABEL, Atty. Reg. No. 0025034, P.O. Box 1423, Dayton, Ohio 45401
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

**{¶ 1}** Gene A. Bozarth pled guilty in the Greene County Court of Common Pleas to one count of aggravated possession of drugs, a felony of the third degree. The trial court imposed 30 months in prison.

**{¶ 2}** Bozarth appeals from his conviction, claiming that the trial court relied on inaccurate information that was not included in the presentence investigation report (PSI) and that his counsel rendered ineffective assistance. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

**{¶ 3}** According to the PSI, on June 18, 2019, an employee at a Circle K gas station called the Greene County Sheriff's Office to report shoplifting. Deputy Joseph Thorne responded. Upon arrival at the Circle K, the employee informed the deputy that the suspect had left and gone into a Tractor Supply Company store. Deputy Thorne approached Bozarth at the Tractor Supply Company store, told Bozarth that he was investigating a theft complaint, and asked for Bozarth's identification. Bozarth stated that he did not have identification and did not know his Social Security number. Bozarth provided the name "Tony A. Combs" and a birth date. Dispatch told Officer Thorne that Bozarth's information was not valid. Bozarth then said his name was "Tony Anthony Combs" and gave a different birth date (by one day). Dispatch again advised Deputy Thorne that the information was not valid.

**{¶ 4}** Deputy Thorne walked Bozarth to his cruiser and told Bozarth that he would be transporting Bozarth back to the Circle K for further investigation. The deputy began to perform a pat down prior to placing Bozarth in the cruiser. Bozarth took a glass drug

pipe from his front right pocket and tried to toss it under the cruiser. The deputy placed Bozarth in handcuffs, retrieved the glass pipe, and searched Bozarth. Thorne located white rock-like substances, white powder, butane, and other items. At the Circle K, the employee identified Bozarth as the individual who stole butane torches.

{¶ 5} In August 2019, Bozarth was indicted on one count of aggravated possession of drugs (methamphetamine) in an amount equal to or exceeding the bulk amount, but less than five times the bulk amount. The charge included a forfeiture specification concerning the seized drugs and other contraband. The court set an own recognizance bond. The Sheriff's Office served Bozarth with the indictment at the Montgomery County Jail, where Bozarth was being held on an unrelated case.

{¶ 6} On December 12, 2019, Bozarth pled guilty to the charged offense and forfeiture specification. In exchange for the plea, the State agreed to recommend community control sanctions. After reading the written plea agreement during the plea hearing, the court told Bozarth that it was not bound to follow the State's recommendation. Bozarth indicated that he understood. The court further told Bozarth that, "even though I can conclude your case today, I'm not going to do that. I'm going to put disposition down the road, so I can learn more about you and about this case and make an informed decision as to what the appropriate outcome should be, and I just wanted you to be aware of that as well." After consulting with defense counsel, Bozarth indicated that he still wanted to plead guilty. The trial court accepted Bozarth's guilty plea and found that it was knowing, intelligent, and voluntary.

{¶ 7} The trial court initially scheduled Bozarth's sentencing hearing for January 16, 2020, and ordered a presentence investigation. The court instructed Bozarth to

complete his questionnaire honestly, promptly, and completely, and to return it to the probation department at his first opportunity. The court also told Bozarth to make himself available to the probation department for a PSI interview. Bozarth informed the court that he was at the Montgomery County Jail and asked if the interview would occur there. The court responded, "Well, you don't have any responsibility. They're going to take care of the litany on that." The court told Bozarth to "just get your questionnaire back as soon as possible." Bozarth asked if he should give it to his "other lawyer" or "do it now." The court stated that it "probably would be wise to do it now. That's probably a good idea. We'll give you the opportunity to get that squared away. * * *"

{¶ 8} On January 16, 2020, Bozarth was conveyed from the Montgomery County Jail to the Greene County Jail, and Bozarth's counsel filed a motion to waive the mandatory fine and an affidavit of indigency. The sentencing hearing was continued, however, due to Bozarth's awaiting a bed at the Morning Star Treatment Program for his Montgomery County case. Bozarth completed the Morning Star Program on February 20, 2020.

{¶ 9} According to the probation department's update to the PSI, the probation department contacted Bozarth's counselor on February 12 and gave Bozarth instructions to report to the probation department within 24 hours of his release from the treatment program. Bozarth did not report as ordered, but called on February 21. The probation department ordered him to report on February 25, 2020 to complete bond conditions and a PSI interview. Bozarth failed to report then and on other dates in early March.

{¶ 10} On March 6, the trial court rescheduled the sentencing hearing for April 10. The same day (March 6), Bozarth reported to the probation department and signed bond

conditions related to his release on his own recognizance. As part of his bond conditions, Bozarth was required to appear for a PSI interview, which was scheduled for March 17, 2020. Bozarth ultimately completed the interview by telephone.

{¶ 11} The sentencing hearing again was continued and ultimately held on April 29, 2020. At the sentencing hearing, the court heard from defense counsel and Bozarth; the prosecutor declined to make a statement. Defense counsel emphasized that Bozarth had completed a residential treatment program in February 2020 as part of his community control in a Montgomery County case and that Bozarth had been involved with Access of Ohio since that time to deal with his mental health and addiction issues. Defense counsel acknowledged Bozarth's significant criminal record and that there had been "bumps along with way" with Bozarth's recovery. Defense counsel requested community control, stating that he believed "the trend is in the right direction." Bozarth apologized to the court.

{¶ 12} Before imposing sentence, the court reminded Bozarth that it had "wanted to know more about [him] and about this case" and had received a PSI. (Shortly before sentencing, the court received an update to the PSI from the probation department.[1] At

---

[1] The trial court did not include the PSI update letter when it filed the PSI under seal with this court on October 30, 2020. Upon request, this court received a PDF version of the update letter from the probation department on November 9, 2020. We subsequently remanded this case to the trial court to confirm that it had reviewed the update letter prior to sentencing and to supplement the record with that document, pursuant to App.R. 9(E). The trial court supplemented the record with the update letter and further clarified that it had considered the update letter and had allowed defense counsel and the prosecutor to review the update letter. Bozarth's appellate brief, filed in August 2020, did not reference the update letter and Bozarth's argument on appeal suggests that his appellate counsel was unaware of the update letter when his brief was filed. We afforded counsel the opportunity to review the update letter and to request leave to file a supplemental brief. We subsequently denied defense counsel's request to file a supplemental brief.

sentencing, the court considered this update letter as part of the PSI.) The court stated that "probably the best way to explain it to you is basically read what this report has provided me. I'll paraphrase initially." The court, referring to information in the PSI update letter, continued:

> The bottom line is, the probation department has had a lot of difficulty working with you. I don't know whether there is a blame to be placed here, but that tends to stick out.

> They've scheduled meetings with you. They have been postponed. They've been continued, rescheduled.

> At one point you failed to report on March 2d, March 3rd, March 4th. On March 5th, they were finally able to make contact with you.

> When you did report on March 6th, while going over bond conditions, you indicated that you would probably test positive for drugs due to cleaning old drugs out of our [sic] mother's residence. Then you later admitted you used methamphetamine two days prior.

> Now, this raises an alarm for me, because as your Counsel just said, less than a month earlier, you'd completed a drug treatment program; and so less than a month after you completed a program, you're back on drugs again. Program obviously didn't stick.

> But also it's disturbing to the Court is that it was methamphetamine that you said you were using, and that's the nature of this charge.

> You were charged with possessing methamphetamine, so hadn't been much of a break in the use of that particular drug in your life.

On March 17th, they had a meeting with you, and you said you didn't have transportation, so you couldn't deal with that; but you indicated that you were in aftercare treatment at Nova, and you were scheduled to attend treatment the next day.

You were instructed to have the counselor provide information to the Adult Probation Department regarding this; and as of this date, no information has been received.

If you've got something as of the PSI, it wasn't accomplished. * * *

* * * The other factors the Court's looking at here includ[e] the fact that your attorney mentioned that you were on Community Control, but you were on Community Control in Montgomery County when you committed this offense.

So while you had the opportunity to be on Community Control to get some rehabilitation to straighten your life out, you're still dealing with methamphetamine, and you've been non-compliant on bond conditions.

The probation department says you're always providing an explanation for your lack of compliance, and they believe – to use their words – that you blatantly disregard their order for bond conditions.

In my humble opinion, that probably has everything to do with your drug addiction and your inability to get over your drug addiction; but probably what drives the Court as much as anything is the fact that you are not a stranger to the criminal justice system, particularly the prison system.

You've been to prison seven times.  Somewhere along the line for

someone who's 46 years old you have to make a decision in your mind as to what your life is all about, and apparently going to prison doesn't seem to have much of an impact on the direction you think you should be going.

The fact that you're on Community Control – and my bet is it was probably a drug offense in Montgomery County, but you've been convicted of offenses of violence in the past, although that's not significant in my calculus and thinking today; but, nonetheless, it appears that your ability to stay right with the law has great difficulty in every aspect. When you get Community Control, you can't stay clean. You can't follow Community Control. When you're on bond, you can't do that.

You would like to think a person who's been to prison a few times they would say to themselves, this is probably not the place I want to be. Maybe I should do something different in my life.

It just puts the Court in a position to say, you're just not a candidate for Community Control because we would be spinning our wheels trying to get you where you need to be, so the Court based upon that does intend to impose a prison sentence today.

{¶ 13} At this juncture, Bozarth asked to say something. Bozarth told the court:

I just want to tell you, it's been a long bumpy road; and I, I try. I really do. It's just a lot of things happened in my life, and it's been a bumpy road. But, I mean, I'm still thriving [sic] to go toward that way, to a clean life.

I'm in aftercare right now. You know, I'm sticking with it. I'm not

trying to bail out. I'm just hoping you'd give me a chance to let me show you this time. I've got everything going in the right direction right now.

{¶ 14} The trial court reiterated that it did not think that Bozarth was a good candidate for community control. The court told Bozarth about the Oasis Program, which he could request at the institution. The court then sentenced Bozarth to 30 months in prison and ordered him to pay court costs.

{¶ 15} Defense counsel, who had an opportunity to review the update letter, did not object to the trial court's reference to certain information in the update letter or otherwise claim at the sentencing hearing that the information in the update letter was inaccurate.

{¶ 16} Bozarth appeals from his conviction, raising two assignments of error.

## II. Due Process at Sentencing

{¶ 17} Bozarth's first assignment of error claims that the trial court's sentence "was based upon inaccurate data, depriving [Bozarth] of due process and fairness in sentencing." Bozarth emphasizes that the PSI filed in this case did not contain the information that the trial court cited regarding Bozarth's use of methamphetamine after entering his plea. Bozarth asserts that the trial court's sentence was based on "false evidence of recent drug use."

{¶ 18} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly"

finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is otherwise contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 19} "The trial court has full discretion to impose any sentence within the authorized statutory range[.]" *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). In exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. However, the trial court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences. *King* at ¶ 45. The Ohio Supreme Court recently stated that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, Ohio Slip Opinion No. 2020-Ohio-6729, __ N.E.3d __, ¶ 39.

{¶ 20} In this case, the trial court's 30-month prison sentence was within the statutory range for Bozarth's offense, and the record indicates that the trial court complied with R.C. 2929.11 and R.C. 2929.12.

{¶ 21} *Jones*, which was rendered on December 18, 2020, may affect our jurisprudence that we may modify or vacate a sentence that is clearly and convincingly unsupported by the record. We recognize that, due to the timing of its release, the parties have not had an opportunity to address the applicability of *Jones*. Regardless, in this case, *Jones* has no effect on the outcome of the appeal. Even reviewing whether

Bozarth's 30-month prison sentence was clearly and convincingly unsupported by the record under our pre-*Jones* case law, we conclude that it was not.

{¶ 22} At the outset, we note that the PSI was drafted on January 3, 2020 (at which time Bozarth was incarcerated at the Montgomery County Jail) in anticipation of the January 16, 2020 sentencing hearing, which was continued. Shortly before the April 29, 2020 sentencing hearing, the probation department provided the trial court with a letter updating the PSI. That letter detailed Bozarth's interactions with the probation department following his release from the Morning Star Program.

{¶ 23} The PSI reflects that Bozarth had 13 prior felony convictions spanning from 1998 to 2019: aggravated robbery (1998), assault and escape (2000), robbery (2003), assault on a peace officer (2006), aggravated possession of drugs (2010), assault on a peace officer and failure to comply (2010), receiving stolen property (2010), theft of drugs (2016), attempted tampering with evidence (2018), resisting arrest (brandishing weapon) (2019), and aggravated possession of drugs (2019). Bozarth was sentenced to prison in seven of those cases, most recently in 2010. Bozarth had approximately 10 rule infractions while in prison. Bozarth was under community control sanctions in Montgomery County at the time of this offense.

{¶ 24} In determining that Bozarth was not amenable to community control, contrary to the prosecutor's recommendation, the trial court relied extensively on Bozarth's lack of cooperation with the probation department and drug use while on bond. With respect to Bozarth's drug use, the PSI update letter stated, "While going over bond conditions the defendant first attempted to say he would be positive on a drug test today if tested due to 'cleaning out old drugs at his mothers [sic] residence', he later admitted

he used methamphetamine two days prior." The update letter summarized Bozarth's interactions with the probation department, saying:

> In the brief amount of time the defendant has been released from custody he has been noncompliant with this Court. The defendant consistently has excuses for his lack of compliance, and blatant disregard to Court ordered bond conditions; for example within 15 days of being released from a residential treatment program the defendant continued his drug use, failed to report numerous times, and there has not been any documentation provided to support he is in aftercare treatment.

{¶ 25} When faced with the court's recitation of Bozarth's actions as reported by the probation department, Bozarth did not dispute the accuracy of the probation department's letter. Rather, he claimed that "it's been a long bumpy road" and that he was striving to do better.

{¶ 26} With the record before us, the trial court's imposition of a 30-month prison sentence was not clearly and convincingly unsupported by the record. There is no indication that the trial court relied upon inaccurate information or that Bozarth's due process rights were violated.

{¶ 27} Bozarth's first assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 28} In his second assignment of error, Bozarth claims that his trial counsel rendered ineffective assistance by failing to prepare adequately for the sentencing hearing and failing to "call materially false data relied upon in sentencing to the trial court's attention."

{¶ 29} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.). Trial counsel is also entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 689.

{¶ 30} Bozarth's second assignment of error is based on the premise that the PSI did not contain the information regarding Bozarth's behavior in February and March 2020, and thus the court relied on false incriminating information at sentencing, to which counsel did not object. With the record before us, we cannot conclude that defense counsel acted deficiently. Although the information about Bozarth's alleged drug use while on bond and his contacts with the probation department was not contained in the original PSI (which was prepared in January 2020, prior to the events at issue), the information was provided to the trial court by the probation department in an update letter shortly before sentencing, and Bozarth himself did not question the validity of the reported information when he asked to speak to the court in response to the probation department's updated information.

{¶ 31} Arguing on Bozarth's behalf at the sentencing hearing, defense counsel emphasized that Bozarth had completed a residential treatment program in February 2020 as part of his community control in a Montgomery County case and that Bozarth had been involved with Access of Ohio since his completion of the residential program. Defense counsel recognized, however, that there had been "bumps along with way" with Bozarth's recovery. Although defense counsel did not specifically address Bozarth's failure to report to the probation department and his possible additional drug use, we have no basis to conclude that defense counsel was unaware of the information in the update letter, that counsel should have objected to the information, or that the information was false.

{¶ 32} Bozarth suggests in his appellate brief that he would not have entered a guilty plea "had he realized he would be blindsided with false incriminating information at sentencing that would go unchallenged by Counsel." In this case, counsel's alleged conduct at sentencing has no bearing on whether Bozarth's plea was entered knowingly, intelligently, and voluntarily.

{¶ 33} Finally, Bozarth notes that his two "co-defendants" received community control sanctions and intervention in lieu of conviction, respectively. Bozarth's plea hearing was conducted in conjunction with the plea hearings of three other individuals, two of whom had the same defense counsel as Bozarth. There is nothing in the record to suggest that these other individuals were co-defendants. Rather, the record suggests that the joint plea hearing was conducted as a matter of judicial economy. On this record, the sentences imposed on the other individuals at the plea hearing are irrelevant to Bozarth's sentence and to Bozarth's ineffective assistance of counsel claim.

**{¶ 34}** Bozarth's second assignment of error is overruled.

## IV. Conclusion

**{¶ 35}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Marcy A. Vonderwell
Alan D. Gabel
Hon. Stephen Wolaver