[Cite as *State v. Belsar*, 2025-Ohio-57.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30050 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01653 |
| | : | |
| JOSHUA MICHAEL BELSAR | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 10, 2025

. . . . . . . . . . .

MICHAEL O. MILLS, Attorney for Appellant

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Joshua Michael Belsar appeals from his conviction following a jury trial on one count of rape, a first-degree felony.

{¶ 2} Belsar challenges the legal sufficiency and manifest weight of the evidence to support his conviction. He also alleges that his attorney provided ineffective assistance.

{¶ 3} We conclude that Belsar's conviction was supported by legally sufficient evidence and was not against the weight of the evidence. The record also does not portray ineffective assistance of counsel. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} In June 2022, a grand jury indicted Belsar on one count of rape in violation of R.C. 2907.02(A)(1)(b) for engaging in sexual conduct with a victim under 13 years of age. He later pled guilty to a bill of information charging him with rape in violation of R.C. 2907.02(A)(1)(a), which involves administering an intoxicant to the victim. Belsar subsequently withdrew his guilty plea. After the trial court overruled a suppression motion, the case proceeded to a jury trial on the indicted charge.

{¶ 5} At trial, the State presented evidence that the 11-year-old victim had snuck out of her house on March 4, 2022, and had met Belsar near the end of her street. The victim entered Belsar's car with the intention of going to a local park. Belsar instead purchased alcohol at a gas station and drove the victim to his house. According to the victim, he led her into the basement where he lived. He then forced her to drink alcohol and to remove her clothes. The victim testified that Belsar subsequently engaged in multiple acts of sexual conduct with her before driving her home. She stated that Belsar threatened to harm her if she told anyone what had happened.

{¶ 6} The victim's father called the police upon her return home in the early-morning hours. Belsar was still sitting in his car near the victim's house when officers arrived. He denied engaging in inappropriate activity with the victim. For her part, the

victim also told her father and a police officer that nothing had occurred. The following day or shortly thereafter, the victim disclosed to her great-grandmother that Belsar had engaged in sexual conduct with her. The victim did not undergo a medical examination until June 2022. The examination produced no evidence of sexual activity.

{¶ 7} Following his arrest outside of a bowling alley, Belsar was interviewed by two detectives. He initially denied the victim's allegations but eventually admitted having engaged in sexual intercourse with her.

{¶ 8} Based on the evidence presented, the jury found Belsar guilty. The trial court sentenced him to life in prison with parole eligibility after 10 years. It also designated him a Tier III sex offender. Belsar timely appealed, advancing two assignments of error.

## II. Analysis

{¶ 9} The first assignment of error states:

THE STATE OF OHIO FAILED TO PRESENT SUFFICIENT EVIDENCE

TO SUPPORT THE CONVICTION FOR R.C. 2907.02(A)(1)(b) AND THE

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT

OF THE EVIDENCE.

{¶ 10} Belsar challenges the legal sufficiency and manifest weight of the evidence to support his conviction. He cites the lack of DNA or other physical evidence establishing sexual conduct with the victim. He also argues that the victim's trial testimony lacked credibility and that his own confession was false.

{¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to

determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 13} With the foregoing standards in mind, we reject Belsar's legal-sufficiency and manifest-weight challenges. The jury found him guilty of violating R.C. 2907.02(A)(1)(b), which provides: "No person shall engage in sexual conduct with another when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

{¶ 14} The 11-year-old victim testified that Belsar forced her to engage in sexual intercourse in the basement of his residence. The State also introduced Belsar's

videotaped confession and testimony about his admission to engaging in sexual conduct with the victim. Even standing alone, the victim's testimony or Belsar's admission, if believed, was legally sufficient to support his conviction. *State v. Whitfield*, 2023-Ohio-240, ¶ 34 (2d Dist.) (noting that the defendant's admission was legally sufficient to support a conviction); *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.) (recognizing that testimony from one witness can be enough to support a conviction).

{¶ 15} With regard to the manifest-weight issue, Belsar stresses the lack of DNA or other physical evidence establishing that sexual conduct occurred. He also asserts that he falsely confessed after two hours of questioning while intoxicated. Finally, he contends the victim's trial testimony lacked credibility because she denied sexual activity shortly after the incident.

{¶ 16} Upon review, we find Belsar's arguments to be unpersuasive. The lack of DNA or other physical evidence was unsurprising given that the victim was not medically examined until more than three months had passed. Moreover, if the jury credited the victim's testimony or Belsar's confession, the lack of physical evidence of sexual conduct three months later was largely immaterial.

{¶ 17} As for the victim's credibility, she explained that she felt uncomfortable admitting what had happened in the presence of her father and a police officer on the day of the incident. She felt more comfortable later confiding in her great-grandmother. On re-direct examination, the victim added that she initially denied sexual activity because she feared her parents might not believe her and Belsar had threatened to harm her. Pediatric psychologist Brenda Miceli testified that children may delay disclosing sexual activity for

various reasons, including fear of not being believed or as a result of threats from the perpetrator. As the trier of fact, the jury was best positioned to assess the victim's credibility and to take into consideration her initial denial of sexual activity when deciding whether to believe her trial testimony.

{¶ 18} Finally, the jury watched Belsar's recorded interview with police. As the trier of fact, the jury was charged with assessing the credibility of his confession and giving it appropriate weight. Although Belsar claims he was drunk during the interview, detectives testified that he did not appear to be impaired. The jury was entitled to credit this testimony.

{¶ 19} Based upon our review of the record, the jury did not clearly lose its way and create a manifest miscarriage of justice. This was not an exceptional case in which the evidence weighed heavily against Belsar's conviction. Accordingly, the first assignment of error is overruled.

{¶ 20} The second assignment of error states:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS.

{¶ 21} Belsar argues ineffective assistance of counsel based on his attorney's failure to raise the issue of a "false confession" through a motion to suppress or at trial. He also alleges ineffective assistance based on his attorney's failure to challenge Miceli's testimony on the basis of relevance and an improper foundation.

{¶ 22} We review ineffective-assistance claims under the two-prong analysis set

forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the Ohio Supreme Court in *State v. Bradley*, 42 Ohio St.3d 136 (1989). To prevail, a defendant must show that trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. Deficient performance is conduct that falls below an objective standard of reasonable representation. *Strickland* at 688. Prejudice exists when there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

{¶ 23} "[T]rial counsel is allowed wide latitude in formulating trial strategy[.]" *State v. Olsen*, 2011-Ohio-3420, ¶ 121 (2d Dist.). When reviewing ineffective-assistance claims, we may not second-guess strategic decisions. *Strickland* at 689. "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *State v. Conley*, 2015-Ohio-2553, ¶ 56 (2d Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 524-525 (1992).

{¶ 24} Belsar first alleges ineffective assistance of counsel based on his attorney's failure to purse a false-confession argument. He asserts that the issue should have been raised in his motion to suppress and at trial. Although defense counsel did file an unsuccessful suppression motion, Belsar contends it "focused on whether or not alcohol

impaired [his] ability to understand his *Miranda* advisory." Counsel apparently raised that issue in an attempt to invalidate Belsar's *Miranda* waiver and obtain suppression of the confession. On appeal, Belsar fails to explain how simply arguing the falseness of his confession based on alleged intoxication could have led to suppression. He also fails to cite any coercion by police that could have produced an involuntary confession. In short, Belsar's claim that his confession lacked credibility because he was drunk did not constitute legal grounds for suppression. Therefore, defense counsel did not provide ineffective assistance by failing to make the argument.

{¶ 25} Belsar was entitled to argue at trial that his confession lacked credibility. In fact, defense counsel made that argument. His attorney elicited testimony about his consumption of alcohol at the bowling alley prior to his arrest. Defense counsel also cross-examined the two detectives who interviewed Belsar at the police station. Defense counsel repeatedly asked one of them about Belsar's alcohol consumption and suggested that Belsar had exhibited signs of intoxication. Despite defense counsel's efforts, both detectives insisted that they detected no impairment.

{¶ 26} On appeal, Belsar alleges ineffective assistance based on his attorney's failure to seek an expert witness to testify about false confessions. Failure to call an expert witness, however, generally constitutes trial strategy and will not be second-guessed on appeal. *State v. Blanton*, 2023-Ohio-89, ¶ 80 (2d Dist.). Here Belsar suggests that an expert could have testified about intoxication producing false confessions. But defense counsel reasonably may have believed a jury could understand that possibility without assistance from an expert. Moreover, expert testimony was not required for the jury to

review the recorded interview itself and assess Belsar's sobriety and his ability to respond to the detectives' questions.

{¶ 27} Belsar next alleges ineffective assistance based on his attorney's failure to object to Joyce Miceli's testimony about delayed disclosures. He challenges her testimony on the grounds of relevance and an improper foundation. In support, he asserts that the victim's disclosure of sexual conduct was not delayed at all, thereby obviating the basis for Miceli's testimony.

{¶ 28} While not testifying specifically about this case, Miceli opined that children often do not disclose sexual abuse immediately. She explained that they frequently wait to disclose the activity to someone they trust. On appeal, Belsar stresses that the duration of the victim's delay in the present case was brief, possibly only one day. But the fact remains that the victim initially denied sexual activity and later reported it to a trusted adult, thereby creating a delay of some duration. Defense counsel cross-examined Miceli on this issue, presenting a hypothetical question about a one-day delay. Miceli responded that such a delay still would be a "delayed disclosure," albeit "a very short delay." We see no ineffective assistance of counsel arising from defense counsel's failure to object to Miceli's testimony on the basis that there was no delayed disclosure. The second assignment of error is overruled.

### III. Conclusion

{¶ 29} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.